# CASES ARGUED AND DETERMINED

8 1
80 236

IN

# THE SUPREME COURT,

## JULY TERM, 1857.

## PEOPLE, *ex rel.* AYLETT *v.* LANGDON.

Power to fill a vacancy, and power to fill an office, are distinct and substantial in their nature.

The twelfth section of the act concerning the insane asylum, was not designed to apply to the unexpired term of office, but to the unexpired term of the officer, and makes no provision for a vacancy created by the failure of the Legislature to elect on the expiration of the term of the incumbent.

Power of the Governor to fill such vacancy in the office, is not derived from the statute, but from article five, section eight, of the Constitution, and that the appointee of the Executive would only hold until an election by the next Legislature.

The term of the office of the resident-physician of the asylum never runs apart from the officer, and commences running only from the date of his election, the act only fixing the duration of his term, but not the exact time of its commencement.

The vacancy referred to in the act, is a vacancy occurring by death, or otherwise, in the term of a particular officer, which the Governor has the right to fill for the remainder of his unexpired term.

Power to appoint for the full term of the office is vested in the Legislature, and the Governor has no right to exercise it.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This was an information in the nature of a *quo warranto* to try the title to the office of resident-physician of the insane asylum of California. The relator claims the office by an election by the Legislature on the thirteenth of March, 1857. The de-

fendant claims title to the office by virtue of an appointment made by the Governor on the twenty-ninth of April, 1856, for the period of two years from the date of said appointment. The agreed statement shows that Robert K. Reid was elected by the Legislature on the twenty-fourth of March, 1854, and commissioned on the twenty-seventh of the same month as resident-physician of said Asylum; that the session of the Legislature for the year 1856, adjourned on the twenty-first of April, 1856, without electing a successor to him, and that on the twenty-ninth of the same month, Samuel Langdon, the defendant, was appointed by the Governor.

Judgment was rendered in the Court below, against the defendant, Langdon, and in favor of relator, from which this appeal was had.

*D. W. Perley* for Appellant.

This was an information in the nature of a *quo warranto*, to inquire by what warrant the defendant holds and exercises the office of resident-physician to the asylum for the insane of the State of California.

The defendant claims that he is rightfully in possession of said office under an appointment made by the Governor of the State, on the twenty-ninth of April, 1856, for the period of two years from the time of said appointment.

The relator claims that he is justly entitled to the same office under an election by the Legislature of California on the thirteenth day of March, 1857.

The case was submitted to the Court below, on an agreed statement of facts, and judgment was rendered, ousting the defendant, and declaring the relator entitled to the office, and from that judgment this appeal has been taken.

There has already been one contest before this Court, respecting the right to the office now in controversy. This was the case of the People *v.* Robert K. Reid, decided at the July Term, 1856, in which this defendant was relator.

The relator then claimed the office under the same appointment and commission from the Governor, under which he now claims it. The Court held that his title was valid, and judgment was rendered in his favor.

In order to arrive at a correct conclusion in this case, it is first necessary to ascertain precisely the points decided by the Court in the former case.

It appears, from the agreed statement of facts, in both cases, that Reid was elected by the Legislature for the legal term, on the twenty-fourth day of March, 1854, and on the twenty-seventh of the same month he received a commission from the Governor, took the oath of office, and entered on the discharge of the duties thereof.

The legal term of the office was two years; consequently the term expired on the twenty-fourth day of March, 1856.

The Legislature adjourned for the session, on the twenty-first day of April, 1856, without making any election, and on the twenty-ninth of the same month, Dr. Langdon was appointed by the Governor, as aforesaid.

The following points, then, are expressly decided by this Court, in the former case:

1. That at the expiration of two years from the date of Dr. Reid's election, there was a vacancy in the office.

2. That the Governor had power to fill the vacancy by appointment.

3. That this power of the Governor was in no way affected or impaired by the fact that the vacancy occurred during a session of the Legislature.

An adherence to the doctrines mentioned in the former case, is all that is required to enable the defendant to maintain his present title and right of possession to the office.

There was nothing expressly decided in the case against Reid with respect to the length of time Dr. Langdon was entitled to hold the office, under his appointment and commission as aforesaid.

That question is now distinctly presented by this case, and as far as the defendant's title is concerned, it is the only question in the case.

In discussing this question, the appellant will rely on the following propositions:

1. That after Reid's term of office had expired, the Governor had the power under the Constitution and laws, to fill the office, for the whole term.

2. That the Governor had the power to fill a vacancy in the office until the end of the term in existence, at the time the defendant was appointed; or, in other words, to fill a vacancy of any unexpired term.

3. That this term does not expire until the twenty-fourth day of March, A. D., 1858.

If the first proposition can be maintained, then Langdon is entitled to the office until the twenty-ninth day of April, 1858. If the last two can be maintained, then he is entitled to the office until March 24th, 1858.

The office in controversy is not an office created by the Constitution, but it was created by the act of May 17th, 1853, Comp. Laws, 921, and referred to in the statement of facts.

By the sixth section of article eleven of the Constitution, it is provided as follows:

"All officers, whose election or appointment is not provided for by this Constitution, and all officers whose offices may here-

after be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

This, then, is one of the offices referred to, and included in the above section of the Constitution.

The fifth section of the act creating the office, provides as follows:

"The Legislature shall elect, on joint-ballot, one resident-physician, who shall be superintendent of the asylum. He shall hold his office for two years, and until his successor is appointed and qualified."

It is now contended, that this being an office created by law, the legislative power in filling it is limited to two modes by the sixth section of article eleven of the Constitution, above cited.

The first is an election by the people, the second is an appointment by the Executive of the State, or by the Governor and Senate.

It never was intended by the Constitution to allow the Legislature to create the office, and then to fill it by an election by themselves.

Such a proceeding is not only a violation of a salutary principle of free government, but it is in direct conflict with the third article of the Constitution, which provides as follows:

"The powers of the government shall be divided into three separate departments: the executive, the legislative, and the judicial, and no person charged with the exercise of powers belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases hereinafter expressly directed or permitted."

To create the office, prescribe the duration of the term, and to define the powers and duties of the officer, are clearly legislative functions, but to fill the office by an election in joint convention is not a legislative function. It is most clearly an invasion of the executive power of the State, or the rights of the people to elect.

By the third article, then, of the Constitution, the Legislature have no right to fill the office by election, and by section six of article eleven, they are required either to give the election to the people, or to give the appointment to the Executive.

By such an arrangement alone can the principle of the separation of powers, under the Constitution, be preserved.

The words "election" and "appointment" have a distinct and substantive meaning in the Constitution. They are not synonymous or convertible terms in that instrument. It is believed that no instance can be found in the Constitution itself, where these words are used indiscriminately.

If, however, this construction of those two articles of the Constitution is incorrect, and it should be held that the Legislature may create the office, and afterwards fill it by election, it is still

People *v.* Langdon.

apparent from the fifth section of the act, that they only intended to provide for the first election, and after the first legal term had expired, that they intended to give the appointment to the Governor.

The fair and plain meaning of the words of the act sustains this position.

If they had intended thereafter to fill the office by an election, they would have said that the officer should hold his office for two years, and until his successor was elected and qualified; but they have not said this; they have said he should hold it until his successor was appointed and qualified.

The point is not only raised here, but is relied on with some confidence, and the Court is respectfully requested to decide upon the constitutional right and power of the Legislature to fill by election an office which they themselves have created. If they have not such power, this case is at an end, for the relator's title would be void, and the defendant being in possession would be entitled to judgment.

There can be no doubt, that if the Legislature, after creating the office, had provided, that it should be filled every two years by appointment by the Governor, that this would have been perfectly constitutional under section six, article eleven; and it is believed that this provision, taken in connection with the third article of the Constitution, and the language of the act creating the office, fully sustains the first proposition.

The second point mentioned by the appellant, is, that the Governor had power to fill the office, in case of a vacancy for the unexpired term.

The legal term of the office is made two years by the fifth section of the act; but the act does not specify any particular day or time on which the term shall begin to run.

This point must be determined by, and depends on, the time when the first election took place under the act.

Not only the termination of the first term, but of all succeeding terms, must be governed and controlled by it as long as the present act is in force. As the election of Reid was the first election under the act, and as it occurred on the twenty-fourth of March, 1854, the first term commenced on that day, and expired on that day two years.

It appears to be almost too plain a proposition to require argument, that as soon as one term ends, another term commences to run. There can be no such thing as an interim, or interregnum, between terms.

The Court decided in Reid's case, that at the expiration of two years from the date of his election, the office was, *de jure,* vacant, although, *de facto,* he was still in office, and performing its functions.

Now, if there was a vacancy at that time in the office, there

2

must have been a vacancy either of a whole term or of an unexpired term, and if the Governor had power to fill that vacancy, (which the Court has already decided,) he must have had power to fill it either for the whole term or for the unexpired term.

If there was a vacancy of the whole term, then the Court, in deciding the former case, that the Governor could fill it by appointment, have really, and in effect, though not in express words, decided this controversy; for the commission of Langdon runs until April 29, 1858.

If there was only a vacancy for part of a term, or of an unexpired term, which is the same thing, then express power and authority are given to the Governor by the twelfth section of the act, to fill such vacancy.

The words of this section are as follows:

"If any vacany shall occur in the office of resident-physician, such vacancy shall be filled, for the unexpired term, by appointment by the Governor."

If the position assumed in this argument be correct, that as soon as one term ends another begins, then respondent held over into the second term for one month and five days, and consequently when Langdon was appointed, there was an unexpired term of one year and about eleven months, which would end on the twenty-fourth of March, 1858, whereas if he held for the two years from the date of his commission, his term would expire April 29th, 1858.

When the Court considered the case of the People *v.* Reid, the twelfth section of the act above cited was not brought to the notice of the Court at all. It was not considered material in that controversy, as nothing was involved except a present right of possession in Langdon, but the Court, in giving its opinion, appears to have founded the power of the Governor to fill the vacancy, on the eighth section of article five of the Constitution, which limits the power of the Governor to filling vacancies in office, and prescribes that he shall only fill until the end of the next session of the Legislature, or the next election by the people.

However correct the doctrine may be in respect to other offices in which no specific provision of law is made for filling the vacancy, it certainly does not, and cannot apply in this case.

The power of the Governor to fill the vacancy, in this office, does not depend on that article of the Constitution; the defendant's right to the office is in no way affected or controlled by that article; in fact, it has no influence or bearing on the case whatever, as can be most clearly shown.

The respondent's counsel in the Court below felt the infirmity of the case, provided any force or effect whatever was given to the twelfth section of the act above cited. He contended that this section was in direct conflict with the eighth section of ar-

ticle five of the Constitution; that it enlarged the power of the Governor, and was, therefore, void.

The appellant contends that the twelfth section of the act is a legal, valid, and constitutional provision of law for filling a vacancy in this office, and he is willing to rest the entire controversy on this point. If this section of the act cannot be successfully assailed, then according to his own admissions, the respondent has no case, and the judgment must be reversed.

The question then is, is this section of the act constitutional? I answer that it is clearly so under section six of article eleven of the Constitution, above cited.

This being one of the offices created by law, it was fully admitted in the Court below, by respondent's counsel, that the Legislature could have provided that the Governor should always fill the office for the whole term by appointment, and that such a provision of law would have been perfectly constitutional, under section six of article eleven.

Is it not, then, the greatest inconsistency to maintain that the Governor might have power given him by the act to fill the office for a whole term, but could not, by any possibility, have power to fill for a part of a term, or an unexpired term?

The greater power, would clearly of itself include the less. How much stronger, then, does that power appear when directly sanctioned by the clear and express words of the very act creating the office.

I repeat, then, that by the fifth section of the act, the Governor has the power to fill for the whole term, after the first term had expired; and by the twelfth section of the act, he has power to fill any vacancy that may happen during the existence of a term, until that term is fully ended; and that both of those sections are legal and constitutional, under the sixth section of article eleven of the Constitution.

I will now show that section eight of article five of the Constitution, does not apply to the case. The words of that section are as follows:

"When any office shall from any cause become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission which shall expire at the end of the next session of the Legislature, or at the next election by the people."

Wherever the Constitution itself provides a mode of filling an office, that mode must be followed, and the Legislature cannot alter it; but where the Constitution is silent on the subject, but the law provides the mode of filling the office, that mode must be followed, except it be in conflict with some other provision of the Constitution.

This section only applies to vacancies in office where there is no

mode provided by law for filling them.  In this case, there is a mode provided, and that is appointment by the Governor for the unexpired term.

The case of Mizner fully sustains the most important points contended for in this argument, particularly the total inapplicability of the eighth section of article five of the Constitution.

The Court say :

" Before the section can apply, two things must be shown—

" 1. That a vacancy existed.

" 2. That no mode of filling it was provided."

The entire case of the relator depends on showing that the power of the Governor to fill a vacancy in the office is limited, by the above section of the Constitution; but he has wholly failed in showing either fact, on which alone the section could apply.

It is, therefore, respectfully submitted to the Court that the judgment is erroneous, and ought to be reversed, and the Court below directed to enter judgment for the appellant.

*Robinson, Beatty & Botts,* for Respondent.

The facts of this case are few and simple.  The Legislature, in 1853, passed an act for the establishment of an insane asylum at Stockton.  The fifth section of the act, (see p. 922 of the Compiled Laws,) provides for the office of resident-physician ; fixes his salary, term of office, and mode of appointment.  He is to be appointed by a vote of the Legislature on joint-ballot, and is to hold office for two years.

The Legislature of 1854 elected Dr. Reid to this office.  The Legislature of 1856 failed to make an election.  On the twenty-ninth day of April, 1856, after the adjournment of the Legislature, Governor Johnson commissioned Langdon as resident-physician for two years from date.  On the thirteenth day of March, 1857, the Legislature, on joint ballot, elected Aylett to the office.  On the thirtieth day of April, the Legislature adjourned *sine die.*

The first question that these proceedings gave rise to, was as to the validity of Langdon's commission.  It came to this Court under the title of " The People *v.* Reid," decided at the July Term, 1856.  The Court there held that the failure of the Legislature to elect, left the office vacant, and that the Governor might fill the vacancy, by virtue of the eighth section of the fifth article of the Constitution.  Langdon was accordingly installed. The question now arises as to the term for which the appointment is to endure.  The relator claims his office, first, from the date of his election ; and, secondly, from the day of the adjournment of the Legislature.  Langdon pretends that he is entitled to the office for two years from the date of his commission, viz. : from the twenty-ninth day of April, 1856.  The Judge of the

Fifth Judicial District, to whom the case was submitted by con-
sent, rendered judgment in favor of Aylett, and from that judg-
ment Langdon appeals to this Court.

The eighth section of the fifth article of the Constitution pro-
vides for the filling of vacancies in office, and is in these words :

" When any office shall from any cause become vacant, and no
mode is provided by the Constitution and laws for filling such
vacancy, the Governor shall have power to fill such vacancy by
granting a commission, which shall expire at the next session of
the Legislature, or at the next election by the people."

The construction of this clause has been the direct subject of
judicial decision in five different cases in this Court.   1. The
People v. Mott, 2 Cal. ; The People v. Fitch, 1 Cal. ; The People
v. Wells, 2 Cal. ; The People v. Reid, Oct. Term, 1856 ; The People
v. Mizner, January Term, 1857.

The principles deducible from these decisions, nay, directly
established by them, are, first, that when under this clause the
Governor fills a vacancy, he fills it for a time defined by the Con-
stitution, that is, until the meeting of the elective body ; second-
ly, that the action of the elective body necessarily supersedes
the power of the Governor to fill a vacancy; and, thirdly, that
the spirit of the Constitution is opposed to the sole power of
appointment in the Executive, and that it is not to be favored
by construction or implication.

If it were admitted that Langdon's appointment was made by
virtue of the eighth section of the fifth article of the Constitution,
there could be no question that his term ended, either with the
election made by the Legislature, or with the adjournment of
that body.

But it is contended that he was not appointed under that sec-
tion, but under and by virtue of the twelfth section of the act
creating the hospital.   That section reads as follows :

" If any vacancy shall occur in the office of resident-physician,
such vacancy shall be filled, for the unexpired term, by appoint-
ment of the Governor."

It is said that this is a case in which a mode of filling the
vacancy is provided by law, and consequently it does not come
within the eighth section of the fifth article.

Allowing the argument urged by the respondent, it must be
borne in mind that the Constitution provides that the commis-
sion shall expire at the end of the next session of the Legislature,
or the next election by the people.   Here is a constitutional
term : Yet the act under consideration may extend to the ap-
pointment of the respondent beyond the time when the appoint-
ing power returns to the hands of the people by the Constitution,
and thus deprive them of the right of electing their judges.
2 Cal. R., 205.

Here is a clear recognition of the distinction between the

power of prescribing the mode of filling a vacancy and the power of affecting the constitutional term for which the vacancy, however filled, is to endure. The commission, whether from the Governor or any other source the Legislature may prescribe, is to expire at the end of the next session of the Legislature, or at the next election by the people.

In this case, then, we contend that the object of the twelfth section of the act is to provide only a mode of filling a vacancy in the office of resident-physician; the office itself to be filled, as provided in the fifth section, by a joint-vote of the two houses; that to permit the Governor, in filling a vacancy, to appoint for two years, would be to forget that the Constitution fixes the term for which an appointment to a vacancy may endure. It would be to extend the appointment to fill a vacancy "beyond the time when the appointing power returns to the hands of the Legislature."

In Fitch's case, it was held that the power to fill a vacancy arose only from the necessity of filling the gap or interregnum between the occurrence creating the vacancy and the meeting of the elective body, and consequently it was an absurdity to suppose that it would exist during the sitting of the elective body; and especially that it would not be superseded by the action of that body. Suppose Langdon had not been appointed until after the meeting of the Legislature of 1857; then this case would have been precisely that of The People *v.* Fitch.

If the appointment by Governor Johnson of Langdon, if made in January, 1857, would have been made to yield to Aylett's election in March, how is it that the appointment of the same incumbent in April, 1856, could supersede the right that the Legislature retains to elect a resident-physician on joint-ballot? There is surely nothing in the time of year, and Governor Johnson possessed no more power in April, 1856, to control the elective right of the Legislature, than he did in 1857.

An attempt will be made, as we have before suggested, to make this case turn upon the twelfth section of the act creating the insane asylum. It is said that the interpretation of the eighth section of the fifth article is not involved, because in this case a mode of filling a vacancy is provided by law. If Judge Murray's views, in Well's case, are correct, and really we do not see that they admit of argument, then the word mode, in the eighth section, only refers to the manner or means by which the vacancy is to be filled. If this be so, the law provides no other mode than that pointed out by the Constitution, viz.: appointment by the Governor. It is, therefore, merged in the constitutional provision, and so this Court seems to have considered it in Reid's case. There they treat this very appointment of Langdon as one made by the Governor, under and by virtue of the eighth section of the fifth article of the Constitution.

People v. Langdon.

The appellant, foiled in the attempt to sustain his claim under any mere power of the Governor to fill a vacancy, whether derived from the Constitution or the statute, seeks to bring this appointment under the authority to fill the office. He says the Legislature could have bestowed upon the Governor the power of appointment to office, instead of providing for the election by joint-ballot; and he concludes that if they could authorize his appointment for the whole term, *a fortiori*, they might empower him to appoint for a part of the term.

"The power to appoint to an office carries, by implication, the power to fill a vacancy in such, and all necessary authority to carry out the original power and prevent its becoming inoperative."

We think the appointing power of the Governor must grow in favor with the Supreme Court, before they can be brought to construe the fifth section of the Hospital Act as intending to provide that the first physician shall be elected by the Legislature, and all subsequently shall be appointed by the Governor. Why, in Reid's case, the Court and Langdon's counsel all talked about the vacancy occasioned by the failure of the Legislature to elect. These are the very words of the Court: "The failure of the Legislature to elect." How could they fail to do that which by law they could not do?

The argument of the appellant's counsel is undoubtedly ingenious, as his arguments always are, and is as able as the nature of the case will permit; but we think it needs no further notice at our hands.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The act creating the office provides, that the officer shall hold his office for two years, and until his successor is appointed and qualified.

It will be observed, that at the date of Langdon's appointment, the term of Reid had expired. Immediately upon the appointment of Langdon, a proceeding was instituted to determine the rights of the parties to the office; Reid contending that he was entitled to continue in office, until his successor was elected and qualified by the Legislature. This question was fully considered in the case of "The People v. Robert K. Reid," July Term, 1856, in which it was held, that the law creating the office had limited the term of the incumbent to two years, and that the words "until his successor shall be appointed and qualified," were not intended to extend the term indefinitely, but to prevent an interregnum in the office, by authorizing the old incumbent to act as a *de facto* officer until such time as the appointing power, or the power to fill vacancies, could act on the subject.

The appellants now contend, that after Reid's term expired,

the Governor had authority to fill the office for the whole term, and second, that the Governor had power to fill a vacancy in the office until the end of the unexpired term.

I shall consider the second proposition first in order. The tenth section of the act provides that, "if any vacancy shall occur in the office of resident, or assistant-physician, such vacancy shall be filled for the unexpired term by appointment of the Governor." The eighth section of the fifth article of the Constitution of this State provides, that when any office shall, from any cause become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill the same by granting a commission, that shall expire at the end of the next session of the Legislature, or the next election by the people."

In the case before us, the law has provided for filling the vacancy, by appointment for the balance of the unexpired term. Waiving the question, whether the Legislature could constitutionally provide for filling a vacancy beyond the period when the appointing power could act upon the subject of the vacancy, it becomes of the first importance to ascertain what is meant by the words "unexpired term;" whether they relate to the office or officer. The counsel for the appellant has very ingeniously assumed that *the legal term of the office* is two years; that the term commenced to run from the date of Reid's commission, and that there was a fraction of the term at the date of the defendant's appointment.

This is a mere *petitio principii.* If it is to be taken for granted, that the Legislature has fixed distinct terms for the office, which commence and terminate on particular days, then the case of the relator is at an end.

The error of the argument, in my opinion, consists in assuming that the term of the office, and of the officer, are one and the same, when in point of fact, there may be no term in an office, but a term in the incumbent. In other words, that there are no fixed periods whereby a term, as apart from the officer, begins and leaves off. To illustrate the distinction more fully, the term of the office of Judges of the Supreme and District Courts is fixed at six years. These offices become vacant at a particular point of time, and if no person is appointed or chosen to fill them at the time provided, he who is afterwards elected only takes the remainder of the unexpired term of the office.

In the act under consideration, there are no words employed, which, even by implication, would warrant us in assuming that the Legislature intended to create distinct terms in the office of resident-physician, as contradistinguished from that of the officer, or that any term commenced running in the office, except from the induction of the incumbents, but, that they simply intended to provide for the duration of the office of the incumbent. For

the purpose of ascertaining the intention, let us look for a moment at the practical workings of the construction contended for by the defendant. Reid was elected on March twenty-seventh, 1854. Now, admitting that the term of the office commenced running from that date, it must expire on the twenty-eighth of March, 1856. If, then, the Legislature which was the appointing power, and which was in session, and in a situation to act, failed by some accident to elect before the thirtieth, such election would be void, and after one hour, or one day of the new term had commenced, even although the Legislature was in session, the Governor would have the right to appoint for two years, minus the day, or hour that had expired. Or again, the Legislature may fail to agree in an election; will such failure be construed to deprive the succeeding body of a power of appointment which they have reserved to themselves?

Let us suppose that the Legislature had elected some one in the place of Reid, one month after his term expired, from what period of time would the commission of the new incumbent, have dated—from the expiration of the two years that Reid was authorized to hold, or from the date of his election. Most certainly from the latter, for the law says the officer shall hold his office for two years. Now, if there was a term in the office, and the party had not been elected until one month after the expiration of the old term, it is evident that he could not hold but one year and eleven months, instead of the two years that the law says he shall.

In the case of Shelby *v.* Johnson, the Supreme Court of Texas (a case very similar to the one under consideration,) use this language: " When the incumbent is removed by death, the office becomes vacant and returns to the appointing power. It cannot either in reason or the nature of things, be affected by the nature of the deceased, unless the *creative law carries out a definite* and precise period for the beginning and termination of the term of the said office, whether the same has been holden by one or more incumbents." When we come to consider that the Legislature have retained in their own hands the appointment of this officer, I think, that the conclusion is irresistible, that the language of the twelfth section was not designed to apply to the unexpired term of the office, but of the officer or incumbent, and that where the office has become vacant by reason of the expiration of the term of the incumbent, and the failure of the Legislature to elect, that then the general law of the State defining vacancies in office, and the mode of filling the same, would govern.

By adopting this construction, both acts can be upheld, and any apparent or real incongruity reconciled.

Again, the office of resident-physician was created on the seventeenth of May, 1853, and the Legislature adjourned on the

nineteenth of May without electing an officer, and after said adjournment the Governor appointed Reid, who was elected the twenty-fourth ·of March, 1854. Now, adopting the reasoning of the defendants, and how stands the case upon this state of facts? According to their view, as soon as the Legislature adjourned without electing, a vacancy occurred in the office. The term must have commenced running from the nineteenth of May, and as Reid was not appointed until after this period, he was appointed to fill the residue of the term which would expire the nineteenth of May, 1855, but the Legislature elected him in March, 1854. Now this election, made more than one year before a vacancy would occur, and in derogation of the rights of a succeeding Legislature, which might claim that they alone were competent to elect this officer, was either legal or void. If legal, then Reid held until the nineteenth of May, 1855, by virtue of his appointment by the Governor, and two years more by his election, which would make his term expire on the nineteenth of May, 1857, so that there was no vacancy in the office at the date of Langdon's appointment, and Aylett, the relator, having been duly elected by the Legislature to fill the next term, would be entitled to the office.

If, on the other hand, the Legislature of 1854, had no power to forestall the Legislature of 1855, by electing the officer, and said election is void, then Reid's term, as the appointee of the Governor, expired on the nineteenth of May, 1855, from which point of time a new term commenced running, which would expire May 19, 1857. Langdon having been appointed (as contended for) on the twenty-ninth of April, 1856, was only appointed for the balance of the unexpired term, which ended on the nineteenth of May, 1857, and the relator having been elected March 13, 1857, is entitled to the office. So that if we adopt the argument of the defendant, he has, by his own showing, lost his case. But, we decided, in the case of Reid, that there was a vacancy in the office, and this decision could not have been made if we had been of the opinion that there was a term in the office, other or apart from that of the incumbent. This construction has been given to the act by two Legislatures, and if the case were a doubtful one, this legislative exposition would be entitled to consideration.

We are satisfied that there is a substantial difference between the term of an office and the term of the officer, or incumbent, and that the twelfth section of the act under consideration applies to the unexpired term of the officer. Adopting this as the true construction, there is no difficulty whatever on this branch of the case, for a vacancy may exist in an office for which there are no terms fixed by law. This, as before remarked, may occur from a failure to elect or appoint. In such cases, it is made the duty of the Governor to grant a commission to fill such vacancy

until the appointing power can act. The power to fill a vacancy and the power to fill an office are distinct and substantive powers.

In the case of The People *v.* Fitch, 1 Cal., this Court say: " The right of the Legislature to elect and control the State Printer, cannot be defeated by any inference in favor of the appointing power of the Governor." Again, in the case of The People on the relation of Ryder *v.* Mizner, this Court uses this language : " It would seem that the evident intent and whole spirit of the Constitution of the State was to limit the patronage of the Executive within very narrow bounds. This is seen from the fact that the only office created by the Constitution in which the Executive constitutes any part of the appointing power, is the office of Secretary of State. This is further shown by the provisions of the eighth section of article fifth, which limits the duration of an appointment of the Governor, in cases of vacancy, to the next election by the people, or the next session of the Legislature, except when a different rule is specially provided by statute. The power to fill vacancies had to be vested in some department of the Government, and the Constitution was compelled to vest it in the Executive, because the only department that could be properly and efficiently charged with such a duty. But the Constitution carefully limited this power to fill vacancies for the time only, and when the appointing power for the whole time can act, the appointment of the Executive for the time being ceases."

If the Court is correct in its former opinions, as to the theory of our Constitution, and the policy which it was the intention of its framers to establish, then every intendment and implication of law would be in favor of the appointment of the relator, unless the language of the statute under which the defendant claims was most clear and explicit. It is true, that the language of some of the opinions of this Court would seem to establish that there was no difference between the term of an office and of its incumbent, but the question was not made in any former case.

Having thus disposed of this point, we will now consider the first proposition : that the Governor had power to fill the office for the whole term.

The appellant contends that, under the third article, and the sixth section of the eleventh article of the Constitution, the Legislature have no power to elect an incumbent to an office. The third article provides for the distribution of the powers of government between the executive, legislative, and judicial branches of the government, and forbids those charged with duties belonging to one, from exercising functions appertaining to another department. Under this provision, it is urged that the Legislature may create the office, but cannot elect the officer; that it would be exercising power belonging to the executive branch of

the government, or to the people. Unhappily for the argument, there is no fourth branch of the government recognized by the third article of the Constitution, which is represented by the people, and if there is any encroachment upon any other department, it must be upon the Executive.

The power to fill an office is political, and this power is exercised in common by the Legislatures, the Governors, and other executive officers, of every State in the Union, unless it has been expressly withdrawn, by the organic law of the State. That it has not been by our Constitution, there can be no doubt : First, because there is no clause that would warrant such a construction : and, Second, because there are several that would forbid it.

But it is said that this power is taken away by the sixth section of the eleventh article, which provides that "all officers, whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct." Much stress is laid upon the word *appointed,* as used in this section. This is mere hypercriticism ; the former decisions of this Court have substantially settled this point. The word *appoint* was probably used as a more comprehensive term to convey the idea of a mode of constituting or designating an officer, whether by election or otherwise. In fact, the words " elect and appoint " seem to have been regarded as synonymous by the Convention.

The third section of the sixth article requires the first Legislature to elect Supreme Judges, and the fifth section of the same article provides that the District Judges shall be " *appointed* by the joint vote of both houses."

It would be useless to pursue this argument further; this power has been always exercised by the Legislature, and never before denied. It is not prohibited by the Constitution, and according to the theory and spirit of our institutions, is safer when exercised by the immediate representatives of the people, than when lodged in the hands of the Executive.

From the foregoing, our conclusions are : First, that the Governor had no power to appoint for the full term; Second, that the commission of the defendant expired as soon as the Legislature elected the relator ; and, Third, that the relator is entitled to enter upon, and discharge, the duties of the office, for the full term of two years from the date of his election.

Judgment affirmed.

BURNETT, J.—I concur with the Chief Justice in confirming the decision of the District Court, and generally in the positions taken by him. In any view that can be taken of this case, I think the relator entitled to the office. The only difficulty with

me arises from the language of the twelfth section of the act creating the asylum, which is as follows:

"If any vacancy shall occur in the office of resident-physician, such a vacancy shall be filled for the unexpired term by appointment of the Governor."

The phrase "any vacancy," is broad and general, and without any express restriction; and at first would seem to embrace every vacancy, whether occasioned by the failure of the appointing power to act, or by the happening of some event *after* the commencement, and *before* the termination of the term. When I drew up the opinion in the case of The People *v.* Mizner, I was under the impression that this was the correct construction. The question was not at all material to the determination of that case, and therefore did not receive full consideration. But in the present case, it becomes material, for the purpose of determining when the term of the relator commenced.

There would seem to be no doubt of the power of the Legislature to create the office, to designate the term, and the mode of filling *all* vacancies, however occasioned, and also to fix the duration of the appointment to fill the vacancy. In a word, the office being one purely of legislative creation, the Legislature had full power over the entire subject. The Legislature, then, had the perfect right to enact, that *all vacancies* in this office should be filled by the Governor for the unexpired *term;* and by the term, I understand the period of two years, for no other term is mentioned by the act, and the language must refer to the term as defined by the act itself.

The whole question is one of statutory construction. What did the Legislature mean by the word *vacancy,* as used in the act? What definition, if any, had the Legislature previously given of this word?

It would seem that there are only three classes of offices created by the Constitution and statutes of this State: 1. When the office is held at the pleasure of the appointing power. 2. When the term commences upon a day *certain,* and runs for a definite period. 3. When the duration of the office is designated, but the commencement of the term is dependent upon an event that may or may not happen upon a *particular day.*

So far as my opportunities for examination have enabled me to judge, this classification is correct, and this case must fall under either the second or third class.

It would seem to be true, that in all cases where it was intended that the term of the office should run independent of the incumbent, that a day certain has been designated when the term should commence; and this, taken in connection with the prescribed duration of the term, determines the period of its termination. By the Constitution of the State, Judges of the Supreme and District Courts, hold their offices from a day, and for a term

certain. And by the provisions of the act concerning offices, Comp. Laws, 239, the Clerk of the Supreme Court, Superintendent of Public Instruction, County Judges, clerks, sheriffs, coroners, assessors, treasurers, surveyors, recorders, and district attorneys, all hold their offices in the same way. But the Governor, Secretary of State, Comptroller, Treasurer, Attorney-General, and Surveyor-General, all hold their offices for a given period, which runs from the time of their installation in office.

If, then, the Legislature, in reference to those offices, each term of which was to be of the *same* duration, and each to commence running from the same period of time, and all the terms, except the first, to succeed each other in the *same* fixed order. has been so careful as to specify the exact day for their *commencement*, it would seem to follow, that the same express designation of the time for the commencement of each term of this office, would have been made, had the intention been the same. But there is no specific *time* designated; and, if, notwithstanding this fact, we hold that the time was intended to be fixed when the first and all succeeding terms should commence running, what day shall we assume?

The act creating the office was passed on the seventeenth of May, 1853, and took effect from and after its passage. The office itself was then in existence from the passage of the act, and if the term commenced running at any fixed period, that period was the day when the act took effect; for if the first term of the office did not commence at the passage of the act, but upon the happening of some subsequent and uncertain event, then there was no specific period for its commencement intended by the Legislature. If, then, the commencement of the first term was not fixed, but was made dependent upon a subsequent event, uncertain *as to the time* when it might occur, it follows that the commencement of the second, and all succeeding terms, must depend upon the recurrence of the same uncertain event. The language of the statute applies equally to the duration and the commencement of all the terms; and as the *same duration* is designated for the first and all succeeding terms, so the *same commencement* must also appertain to all. The statute makes no distinction between any of the terms, either as to their duration or commencement. Whatever rule, therefore, we adopt for the first, must equally apply to all succeeding terms. The office, from the tenor of the act, was intended to exist for an indefinite time, and the succession of many terms must have been contemplated.

If, then, the commencement of the first term was the passage of the act, then each succeeding term would commence on the same day of the same month. But if the first term only commenced to run upon the happening of a subsequent event, uncertain as to the *time* when it would occur, then each succeeding term

would depend for its commencement upon the happening of the same uncertain event.   For example, if the first term only commenced running from the election of Doctor Reid by the Legislature, then the commencement of the second term would be when his successor should be elected; and this rule applies to all the offices of the State, falling under either the second or third class.   The terms of the offices belonging to the second class *must* succeed each other in a regular and fixed order, while the terms of offices of the third class *may* succeed each other *irregularly.*   For example, each Governor holds his office for two years from the time of his installation; and, therefore, the commencement of the term of his office, does not absolutely depend upon the time when the term of his predecessors commenced to run.   While his term of office may not commence at an *earlier* period of the *year,* it may commence *later.*

If the first term commenced running either at the date of the act, or upon the adjournment of the Legislature, on the nineteenth of May, 1853, then any appointment that the Governor could make in the recess of the Legislature, and before the election of Dr. Reid, in March, 1854, *must* have been for the *unexpired term.*   And as the Governor, *under the act,* had the sole power to appoint for the unexpired term, the Legislature had no power to elect Dr. Reid for the same period.

But if the first term did not commence to run until the election of Dr. Reid in 1854, then there was no part of an *unexpired term* existing before that election, which the Governor could fill by virtue of the twelfth section.   If, then, the Executive could fill the office by appointment, between the date of the act, and that of the election of Dr. Reid, it must have been under the provisions of the eighth section of the fifth article of the Constitution.   As the Executive constituted no part of the appointing power to fill this office for the *whole* term, and, as he constituted the *sole* power to fill *vacancies,* it follows, that any appointment he could have made *before* the election of Dr. Reid, *must* have expired, either at the end of the term, or at the end of the next session of the Legislature.   For upon any theory we may please to adopt, the Governor could only appoint to fill a *vacancy;* and such appointment must terminate, either at the time designated by the act, or by the Constitution.

If, then, we take the theory to be true, that the term did not commence to run until the election of Dr. Reid, it is clear, that any appointment made by the Governor anterior to that election, could not have been made under the twelfth section of the act. And from the same premises it follows, that either there was no vacancy in such a case, and the Governor, therefore, had no power to fill it, or there *may* be a vacancy not contemplated by the act.   In other words, the vacancy in such case was a vacancy as defined by the Constitution, and not by the statute.

In what sense, then, did the Legislature use the word vacancy? It is certain, that, whatever vacancy was contemplated by the act, was expressly directed to be filled for the unexpired term by the appointment of the Governor. From this, it is equally certain, that the term must be running before such a vacancy could exist; and, it would seem also certain, that such term could not run apart from the officer, unless we assume some designated *day* upon which it commenced.

To ascertain the meaning of a writer, in the use of a certain term, his previous definition of that term, if he has given one, will be very strong, if not conclusive proof of the sense in which he uses it. So, in reference to the sense in which the Legislature may employ a certain term, the best method is to look to the sense in which it has been previously employed by that body. The sense of the term, as used in the Constitution, will not constitute so good an index to the intention of a statute as the usage of the Legislature itself.

In the act concerning offices, passed April 28th, 1851, article six, section thirty, the word vacancy has received a legislative definition, and as there defined, it means only a vacancy occurring by the hapening of some event during the term, such, for example, as death, or resignation. So far as I have been able to ascertain the fact, this is the only sense in which the term was ever used by the Legislature, before the passage of the act creating the asylum.

The conclusion is, that in this act the term vacancy is used in the same sense in which it had been previously employed by the Legislature. By the act it was made the duty of the Legislature to elect a resident-physician, and it seems never to have entered into the contemplation of that body, that there would be a failure to elect in the mode prescribed, and for that reason no provision was intended to be made for such a contingency. There being no provision in the act itself for filling such a vacancy, the eighth section of the fifth article of the Constitution will apply, and under its express provisions the *commission* granted to Langdon must have expired upon the adjournment of the last Legislature. Had the Legislature elected a successor to Dr. Reid, and had the office afterwards become vacant during the term, and the vacancy had been filled by the appointment of the Governor, such appointment would have been for the unexpired term. This office, I think, falls under the third class I have mentioned; and the term never runs apart from the officer, and only commences running from the date of his election. And under the Constitution of this State, there may be a vacancy in an office before the particular term begins to run.