People *v.* Whitman.

## THE PEOPLE *ex rel.* MELONY *v.* WHITMAN.

The federal office of Surveyor-General is a "lucrative office," and the office of Comptroller of State an "office of profit" under the twenty-first section of the fourth article of the Constitution of this State.

To constitute the "holding" of an office, within the meaning of the Constitution, there must be the concurrence of two wills—that of the appointing power, and that of the person appointed.

As regards the appointing power, the appointment is complete when the commission is duly issued by the President; but the person appointed is required to give bond and take the oath of office before he can possess the office. These acts constitute a condition precedent to the holding the office.

On the sixteenth day of August, 1857, A received from the President of the United States a commission of Surveyor-General for the State of California. At a general election, held on the third day of September, 1857, A and B were candidates for the office of State Comptroller of the State of California—A received the highest number of votes, but never qualified or claimed the office. On the sixth day of September, 1857, A gave bond and took the oath of office under the commission as Surveyor-General, and on the ninth day of the same month entered upon the duties of such office, and on the fifteenth notified the President of his acceptance of the same : *Held,* that A was eligible to the State office when the votes were cast for him, and was duly elected thereto.

The term of the office of Governor is fixed at two years certain, with a contingent extension. When this contingency happens, this extension is as much a part of the entire term as any portion of the two years.

The Constitution itself clearly defines the sense of the phrase "vacancy of the office of Governor," as used in the sixth section, by specifically enumerating in the succeeding section the instances which devolve the duties of the Executive upon the Lieutenant-Governor.

When the Constitution clearly enumerates the events that shall constitute a vacancy in a particular office, we must suppose all other causes of vacancy excluded, especially when this construction can lead to no injurious results.

By the provisions of the Constitution, the manner of electing, and the term of the office of Comptroller are the same as that of Governor, and, consequently, if the Comptroller elect fails to qualify, the incumbent holds over until his successor is elected and qualified.

The failure on the part of the Comptroller elect to qualify, creates no vacancy in the office.

It is only in cases where there is no incumbent to hold over, that the law will allow the appointment of the Executive to fill the office.

The present incumbent of the office of Comptroller is entitled to hold the office until his successor is elected and qualified; and such successor may be elected at the general election of 1858, and when qualified will hold his office for the term of two years, and until his successor is qualified.

*Per Field, J., dissenting.*—The office of Comptroller is an office of profit, within the meaning of the terms of the Constitution.

In *no just sense can* the *tender of a commission* be deemed a "holding" of an office. An acceptance of the office, and an actual entry into the possession thereof by the party to whom the commission is issued, is essential.

To a complete investiture of an office, the act of the appointing power and of the person appointed, must in some instances concur. The appointment is complete when the commission is signed by the President, but Congress has required the Surveyor-General to give bond and take an oath before he can possess the office. The performance of these acts are conditions precedent to the "holding" of the office.

Where such acts are not performed by the appointee, he is not ineligible to a State office; and votes cast for him at a general election for State officers, before such acts are performed, should be counted, and a majority of such votes given for him, will elect him to such office.

In such a case, where the appointee, subsequent to the election, accepts the appoint-

People *v.* Whitman.

ment instead of the State office to which he has been elected, and duly qualifies and enters upon the discharge of the duties of such federal office, his acts operate as a resignation of his right to the State office.

The failure on the part of the Comptroller elect to qualify, created a vacancy in the office for the term for which he was elected. This vacancy the Governor, by the Constitution, was authorized to fill by appointment; and having done so, the appointee was entitled to take possession and enter on the duties of such office.

The existence of an incumbent and a vacancy in the same office, at the same time, is only impossible when the office is of the same term. The office may be filled for one term, and vacant for the succeeding term.

There is no difference between a vacancy occasioned by a failure of the person elected to qualify, and a vacancy occasioned by his resignation immediately after qualifying.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

This is an appeal from the judgment of the District Court, declaring that the defendant has no right to the office of Comptroller of the State, and that the relator is entitled to take upon himself the execution of the said office.

The facts of the case, as disclosed by the record, are briefly these. At the general election of the year 1855, the defendant, Whitman, was elected Comptroller, and in proper time qualified and entered upon the office, which he has continued to hold ever since. At the general election in 1857, J. W. Mandeville was a candidate for the office, and received 57,000 votes—the highest number cast for any candidate. The defendant, Whitman, was also a candidate at the same election, and received 17,000 votes, which was a greater number than any other candidate received except Mandeville. Previous to the election, a commission was issued by the President of the United States to Mandeville, appointing him to the office of Surveyor-General of California, which is a lucrative office under the federal government. The commission was received about the sixteenth of August, 1857; the election took place on the third day of September following, but Mandeville did not take the oath of office, or qualify as Surveyor-General, or enter upon the duties of the office, until after the election. On the sixth of September he qualified, and on the ninth, he entered upon his office, and on the fifteenth, notified the proper department at Washington of his acceptance of the same. He never qualified or claimed the office of Comptroller. On the twenty-eighth of April, 1858, the Governor of the State, regarding the office as vacant, appointed the relator, and the appointment was confirmed by the Senate. Thereupon the relator gave the security required by law, duly qualified, and demanded possession of the office, with the books and papers belonging to the same. The defendant, Whitman, refused to comply with the demand, claiming that he was legally entitled to the office, and the relator instituted the present suit.

*James A. McDougall* for Appellant.

1. At the general election in 1857, Whitman was elected for a full term, as Mandeville was then a disqualified person, and of those qualified, Whitman received the highest number of votes.

2. That there was no constitutional vacancy, and, therefore, the Governor had no power to appoint Melony.

In relation to the first point, if Mandeville was disqualified, no vote could be counted for him. The votes would have to be treated as blanks, or as if cast for a fictitious person. Was, then, Mandeville disqualified?

The President of the United States issued a commission to Mandeville as Surveyor-General, which commission was received by Mandeville in August, 1857, and some time before the election; this commission he has ever since held.

The Constitution disqualifies all persons "holding any lucrative office under the United States."

An office lies in grant. It is a right conferred on an individual by the government. This right is conferred whenever the government's patent is issued and delivered to the individual. The delivery of the patent is the investiture of the officer.

As a general rule, this does not appear to be denied, and, indeed, it does not seem to be a disputable point. The rule is clearly laid down in Marbury *v.* Madison, 1 Cranch, 137, and has been recognized in several succeeding cases decided by the same Court.

It is said, however, that this can not be the construction, for then the President of the United States would have the power to disqualify any person for a State office. We reply, so has the President the power (not the right) to do many mischievous things. If he is disposed to indulge in tricks of wanton wrong, he may involve the nation in causeless war. It is not to be presumed that the President will do any such unjustifiable or unreasonable thing, and no conclusion of the slightest weight can be founded on any such presumption. It is to be presumed that the President will justly and fairly administer his office.

It is to be remembered that it is not always that an office is one to be accepted or declined at pleasure. The State is supposed to have the right to demand service, and in earlier and purer times, before the period of professional office-hunters, the performance of official service was often enforced by severe penalties.

When a patent is delivered, everything is done for the grantor to do. The sovereign power is fully expressed, and the grantee has the property. The bond required is no condition precedent. It is indeed no condition to the grant. It is a duty which the law imposes, and if not complied with, may operate a defeasance, if such is the provision of law or the will of the grantor, but until it has operated such defeasance, the grant remains.

If this view be correct, of course it follows Whitman has the present and a continuous right to the office.

If there be any question as to the preceding point, we think there can be none as to the second point made.

What constitutes a vacancy is clearly laid down by this Court in The People *v.* Wells, 2 Cal., 204. In which case, it is ruled that the Legislature can not define or make a vacancy. The Court say : " Vacancy is a fact, the existence of which, like any other fact, is susceptible of being ascertained. Vacancy in an office can only be said to exist when the office or place has no legal incumbent to discharge the duties of the office." This rule stands undisputed, and is the undoubted law, and we ask, did or did not the office of Comptroller have " a legal incumbent" at the time the Governor issued his commission to the relator ?

There can be no controversy about this, that Whitman was in office at that time rightfully, fully qualified, and competent. His right to the office was perfect, not merely for the fixed period of two years, but until his successor is qualified.

The question, then, is simply as to how the successor is to be made. The Constitution provides for an election every two years by the people. The people have the appointing power. The people make the successor, and they have only clothed the Governor with the power to act in this respect, when their action has failed to continue an incumbent by reason of " death, sickness, absence, removal, or impeachment." And the Court, in the case cited, say, even some of these do not constitute a vacancy and give an appointing power to the Executive.

In The People *v.* Mizner, 7 Cal., 524, it is said, " the intention of the Constitution is to restrict and not to extend the power of the Executive in making appointments," and it is undoubtedly true that it was the design of the Constitution to confer on him no more than necessary power.

If it be true, then, that the Legislature can not define a vacancy, that vacancy is determined by the fact of incumbency, and Whitman was incumbent—of course the Executive had no power of appointment. Melony is not a " successor qualified," and Whitman still rightfully holds. Constitution, Art. V, § 8.

*Jo. G. Baldwin* for Respondent.

The question before the Court is this, was there a vacancy in the office of Comptroller at the time of the relator's appointment? And this question involves the question as to the effect of the commission tendered to Mandeville. If Mandeville held a federal office at the time of the election, it is contended he was ineligible to the State office. But we say that the mere tender of a commission does not constitute a holding of an office. The case of Marbury *v.* Madison, 1 Cranch, 137, is relied on.

But the doctrine in that case has no application to this case.

The question there was not whether the President could make an officer, without his consent, by merely tendering him a commission. The principle would amount to this, that the President could disfranchise a man whenever he chose, by merely sending him a commission for some petty office, or by filing it in the office of the Secretary of State.

Whenever the President saw an opposition Governor about to be elected, he could send a commission to him, and the other candidate would then be elected by a minority vote.

But the rule is, that where there are inconsistent offices, the acceptance of one is the vacation of the other. We do not understand that the holder is ineligible, but that he can not hold both. The acceptance of the last is not forbidden, but the effect of that acceptance is to vacate the other. This question is expressly decided in 4 Maryland R.

In truth, Mandeville, at the time of the election, held no office. When the election was over, the right to the office was cast on him, but he did not accept it. The people exercised the power of filling the office, but the man designated did not take it. The question, then, is, if A is elected to an office, but does not qualify, is there a vacancy, within the meaning of the Constitution, which the Governor can fill? The Constitution, Art. V, § 2, is in these words:

" The Governor shall be elected by the qualified electors at the time and place of voting for members of Assembly, and shall hold his office two years from the time of his installation, and until his successor shall be qualified."

" Section 8. When any office shall, from any cause become vacant, and no mode is provided by the Constitution and law for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people."

" Section 18. A Secretary of State, a Comptroller, a Treasurer, an Attorney-General, and Surveyor-General, shall be chosen in the manner provided in the Constitution; and the term of office and eligibility of each shall be the same as are prescribed for the Governor and Lieutenant-Governor."

It was evidently the intention of the Constitution that offices should be filled periodically. The people are to fill them by general election at stated periods; but if, from any cause, the offices remained unfilled, or become vacated, the Governor is to make temporary appointments, There is no difference between the office being unfilled by failure of the person to qualify, and his qualifying immediately afterwards. In either event, the office is unfilled—that is, vacant. There is an office, and no tenant. This is a vacancy. It is true, the Constitution says that the officer in shall hold his office for two years and until his successor is

qualified. But these last words do not help the other side; for the question is, who is the successor? We say the appointee of the Governor. For definition of vacancy, see The People *v.* Wells, 2 Cal., 204; The People *v.* Mott, 3 Cal., 504; The People *v.* Mizner, 7 Cal., 524.

These cases hold that a vacancy exists, as well by the non-filling of an office, as by emptying it by resignation, etc.

If, therefore, there was a vacancy in the office at the time of the Governor's appointment of the relator, there is an end of this case.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The defendant was duly elected Comptroller at the election of 1855; and, within the time required by law, qualified and entered upon his office, which he has continued to hold ever since. At the election of 1857, the defendant and J. W. Mandeville were candidates for the office—the latter receiving the highest number of votes. On the 16th day of August, 1857, Mandeville received from the President of the United States a commission of Surveyor-General of California, took the oath of office on the 6th of September, entered upon his office on the 9th, and notified the proper department at Washington of his acceptance of the commission on the 15th. The election took place on the 3d of September; and Mandeville never qualified or claimed the office of Comptroller. On the 28th of April, 1858, the Governor, regarding the office as vacant, appointed the relator, and the appointment was confirmed by the Senate. The relator, having properly qualified, demanded possession of the office, which demand being refused, he brings this suit.

The only question presented for determination is, whether there was a vacancy in the office at the time of the appointment of the relator. And this question involves the consideration of two points:

1. Was Mandeville disqualified at the time he received the highest number of votes for the office?

2. Conceding that Mandeville was eligible, is the defendant entitled to hold the office until his successor is elected and qualified?

In considering the first point, it must be conceded that the office of Surveyor-General is a "lucrative office," and the office of Comptroller an "office of profit," under the twenty-first section of the fourth article of the Constitution of this State. It must also be conceded, that if Mandeville held the federal office at the date of the general election in 1857, he was ineligible to the State office. But to constitute the "holding" of an office within the meaning of the Constitution, there must be the concurrence of two wills—that of the appointing power and that of the

person appointed. If the mere tender of a commission could produce this result, then it would be in the power of the President to disqualify any person from holding a State office without his consent. So far as regards the act of the appointing power, the appointment is complete when the commission is duly issued by the President; but Congress has required the performance of certain acts by the appointee before he can enter upon the discharge of the duties of his office. The person appointed to the office of Surveyor-General is required to give a bond and take an oath before he can possess the office. These acts constitute conditions precedent to the *holding* of the office. (United States *v.* Le Baron, 19 Howard, 78.) These acts were not performed by Mandeville when the general election took place in 1857, and he was eligible to the State office when the votes were cast for him. Had he afterwards qualified as Comptroller, and not as Surveyor-General, there could have been no doubt as to his right to hold the State office.

The decision of the Supreme Court of the United States in the case of Marbury *v.* Madison, (1 Cranch, 137,) is not opposed to this view. In that case, it was held that the power of the Executive over an officer not removable at will, ceased the moment the power of appointment had been exercised; and that the power was exercised when the last act of the President had been performed by annexing his signature to the commission.

If these views be correct, Mandeville was eligible, and was duly elected Comptroller; and, as a matter of course, the defendant was not re-elected to the office, and can not claim to hold it on that ground.

We come now to the consideration of the second point. By the second section of the fifth article of the Constitution of this State, it is provided that "the Governor shall be elected by the qualified electors, at the time and places of voting for Members of Assembly, and shall hold his office two years from the time of his installation, and until his successor shall be qualified."

This language is exceedingly plain and explicit. The Governor holds *his* office for two years, and also holds *his* office until *his* successor is qualified. The term of the office is fixed at two years, certain, with a contingent extension. When this contingency happens, this extension is as much a part of the entire term as any portion of the two years. The language of the Constitution is just as clear and express that the Governor shall hold his office until his successor is qualified, as it is that he shall hold it two years from the time of his installation. These two provisions are both contained in the same sentence, closely connected by the copulative conjunction; and both relate to the *term* for which this officer shall hold his office. (Com. *v.* Hanley, 9 Barr, 513.)

But the provisions of the sixteenth and seventeenth sections

of the same article most clearly sustain this view.   Under the provisions of the latter section, the duties of the office devolve upon the Lieutenant-Governor, in case of the impeachment, removal, death, inability, resignation, or absence of the Governor. And by the sixteenth section it is provided that "if, during a vacancy of the office of Governor, the Lieutenant-Governor shall be impeached, displaced, resign, die, or become incapable of performing the duties of his office, or shall be absent from the State, the President of the Senate shall act as Governor until the vacancy be filled or the disability shall cease."          .

The Constitution itself clearly defines the sense of the phrase "vacancy of the office of Governor," as used in the sixteenth section, by specifically enumerating, in the succeeding section, the instances which devolve the duties of the Executive upon the Lieutenant-Governor.   It will be seen that all the instances mentioned are such as can *only* occur *after* the term of the Governor has commenced to run.   It is only after the installation of the particular incumbent that any one of these contingencies can happen.   And the very same contingencies which devolve the duties of Governor upon the Lieutenant-Governor, will devolve them upon the President of the Senate in proper cases.   When the Constitution clearly enumerates the events that shall constitute a vacancy in a particular office, we must suppose all other causes of vacancy excluded; especially when this construction can lead to no injurious consequences.   Even when a statute assumes to point out certain exceptions to a general rule of its own, a Court can not say that other exceptions were intended, though not mentioned.   (Lee.*v.* Evans, 8 Cal. Rep., 431.)

This construction makes the different provisions of the Constitution consistent and harmonious, and renders it most improbable that the office of Governor should ever be without an incumbent.   If the Governor elect should fail to qualify, from any cause, the Governor would hold over until his successor be elected and qualified.   So of the Lieutenant-Governor, as his term of office is the same.   (Article 5, section 16.)   And by the provisions of section eighteen, of the same article, the manner of electing a Comptroller, and the term of his office, are the same as are prescribed for the Governor and Lieutenant-Governor.   If the Comptroller elect fail to qualify, from any cause, the Comptroller holds over until his successor is elected and qualified.   If the failure of the Governor elect to qualify creates no vacancy in the office, but a mere extension of the term of the particular incumbent, neither does such a failure on the part of the Comptroller elect create a vacancy in that office.

But the construction we have given the Constitution is not only supported by the language of the instrument, but by its general scope and spirit.   The executive officers are elected by the people, and under an elective system it is more proper that

these officers should hold over than that the duties should devolve upon those in whose selection the people have had no voice. It is only in cases where there is no incumbent of the particular office to hold over, that the system will allow the appointment of the Executive to fill the office. Our Constitution, whether wisely or unwisely it is not our province to determine, has studiously restricted the patronage of the Governor. (The People v. Mizner, 7 Cal. Rep., 524.) In this case we have to decide between the choice of the people and the appointee of the Executive.

It is contended that if the defendant can hold over until the election and qualification of his successor, that then he must hold for another full term. But is this true? The Constitution provides that the executive officers, except the Secretary of State, shall be elected at the time and places of voting for members of Assembly. It is true that the "Act concerning Officers" (Wood's Digest, 557, sections 2 and 5,) provides that these officers shall be chosen at the general election of 1851, and every second year thereafter. But this provision can not change the Constitution, by annexing restrictions to that instrument which impair the right of the qualified electors of the State to choose their own officers. These officers hold for two years from the time of their installation in office, and until their successors are qualified. There is no fixed day upon which the term must commence and end. The event upon which this depends is contingent, and may happen at a later period in each year. The term *must* run two years, and *may* begin later in the year, at the commencement of each new term. (The People v. Langdon, 8 Cal. Rep., 1.) The case is different with respect to District and Supreme Judges. They hold their offices from a day certain, and for a fixed period, and not until their successors are qualified. (Article VI, sections 3 and 5.)

Our conclusion is, that the defendant is entitled to hold the office until his successor is elected and qualified, and that this successor may be elected at the general election of the present year, and when qualified will hold his office for the term of two years, and until his successor be qualified.

Judgment reversed, and the case of the relator dismissed.

FIELD, J., dissenting.—The question presented for determination is this: was there a vacancy in the office of Comptroller at the time of the appointment of the relator?—and this involves the inquiry as to the effect of the commission received by Mandeville.

The twenty-first section of the fourth article of the Constitution provides that "no person *holding* any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under the State." To the office of Comp-

troller a salary is attached, and it is, therefore, an office of profit, within the meaning of the terms of the Constitution. If Mandeville held the federal office at the date of the general election, he was, of course, ineligible to the State office. But in no just sense can the tender of a commission be deemed a "holding" of an office. An acceptance of the office by the party to whom the commission is issued is essential, and not merely an acceptance but an actual entry into possession. The case of Marbury v. Madison, (1 Cranch, 137,) is relied upon by the defendant, but it has no application to the facts of this case. It was there decided that the power of the Executive over an officer not removable at will, ceased when the constitutional power of appointment had been exercised, and that the power was exercised when the last act from the President had been performed by annexing his signature to the commission of the officer. There is nothing in this decision which can bear on the question under consideration. To a complete investiture of an office, the acts of the appointing power and of the person appointed must in some instances concur. The appointment is complete when the commission is signed by the President, but it is competent for Congress to require the performance of certain acts by the appointee, such as the execution of security, the taking the oath of office, and the like, before he can enter upon the possession of the office. This has been done in relation to the office of Surveyor-General. The appointee is required to give a bond and take an oath before he can possess the office. The performance of these acts are conditions precedent to the "holding" of the office. (U. S. v. Le Baron, 19 Howard, 78.) These acts were not performed by Mandeville when the general election in 1857 took place, and he was not, therefore, at that time ineligible to the State office. The votes cast for him were properly counted, and by them he was duly elected Comptroller.

As we hold that Mandeville was eligible, we refrain from the expression of any opinion whether, if he were ineligible, the votes given for him should be thrown out as so many blanks, and Whitman declared elected, as contended by counsel. Much argument may be had against the propriety of a rule which would, in a popular government, give an office to a person who was clearly not the choice of the people, as shown by the election. (See State of Wisconsin v. Giles, 1 Chandler, 117; opinion of the Judges of the Supreme Court of Maine, in answer to the questions propounded by the Governor, 38 Maine Rep., 597.)

The question then recurs, was there a vacancy in the office at the time of the relator's appointment? Mandeville, by his election, had a right to the office, but he never qualified or claimed it. He accepted the appointment under the federal government, and continued in office under that appointment until after the expiration of the period within which he was required to qualify

as Comptroller.   It is unnecessary to express any opinion wheth-
er, had Mandeville resigned the federal appointment before he
was required to qualify as Comptroller, he could have taken pos-
session of the State office.   It is sufficient for the disposition of
the present case, that he continued to hold the office of Surveyor-
General.   That holding operated as a resignation of his right to
the State office.   The rule as to inconsistent offices is, that the
acceptance of one is a relinquishment of the right to the other.
The failure of Mandeville to qualify created a vacancy in the
office for the term for which he was elected.   This vacancy the
Governor, by the Constitution, was authorized to fill by appoint-
ment.

But it is urged, by the distinguished counsel of the defendant,
that there could be no vacancy, because Whitman was the legal
incumbent of the office at the time of the relator's appointment,
and the opinion of the late Chief Justice, in People *v.* Wells, (2
Cal., 204,) that a vacancy can only be said to exist when the
office has no legal incumbent to discharge its duties, is cited as
conclusive of the position.   The existence of an incumbent and
a vacancy in the same office, at the same time, is only impossible
when the office is of the same term.   There is one office, but
there are different terms in which it is to be held.   It may be
filled for one term, and vacant for the succeeding term.   It is
the evident intention of the Constitution that certain State offi-
ces shall be filled by periodical elections by the people, recurring
at stated intervals, but in case they remain unfilled from any
cause, that temporary appointments shall be made by the Gov-
ernor, which shall expire at the first subsequent general election,
when the earliest action of the people on the subject can be in-
voked.   The Constitution limits the term of the office of the
Comptroller to two years, but that there may be no interregnum
between the expiration of his term and the entry of his succes-
sor, it also provides that he shall hold until his successor is qual-
ified.   That successor is to be designated in one of two ways :
in the first instance, the designation is to be made by the people,
but if that fails to fill the office, then the designation is to be
made by the Governor.   There is no difference between a va-
cancy occasioned by the failure of the person elected to qualify,
and a vacancy occasioned by his resignation immediately after
qualifying.   If any other view could be sustained, it would fol-
low that Whitman would hold for the entire term for which
Mandeville was elected, and though acknowledged to be an able
and efficient officer, the construction, once adopted, would in
other cases lead to the most deplorable results.   For many of
the most responsible and important offices in the State there can
be no election, except to fill a vacancy, or for a full term, and if
a vacancy can not exist by a failure of a person to qualify,
whether such failure arise from death, acceptance of an appoint-

ment under the federal government, or resignation in advance of the right to the office—and the reasons assigned in the present case will apply to any of these causes—it would often happen that weak and incompetent men, for whom not a vote could be obtained from the people, would retain for long terms positions of great trust and power, to the serious detriment of the public interests. "If such must be the inevitable consequence of the rule" contended for by the defendant, "it is evidently the duty of this Court," to use the language of the late Chief Justice, in the case of the People v. Reid, (6 Cal., 290,) "to adopt such a construction as would carry out the plain intendments of the Constitution, which are in favor of the election of officers by the popular vote."

Whitman was the legal incumbent only of the office of his own term, which was prolonged that no interregnum might exist by reason of the vacancy in the office for the term for which Mandeville was elected. That vacancy ceased by the appointment and qualification of the relator, who thereupon became entitled to take possession and enter upon the duties of Comptroller.

---

The above was written some weeks since, and handed to my associates, who have arrived at a different conclusion. After a careful perusal of their opinion, I do not perceive any reason for changing the views I had previously expressed. The construction adopted by my associates appears to me to be in conflict with the former decisions of this Court, the spirit of the Constitution, and the statutes of the State. (People v. Mott, 3 Cal., 502 ; People v. Reid, 6 Cal., 288, Act concerning Offices, § 30.)