THE PEOPLE *ex rel.* RYDER *v.* MIZNER.

Where the appointment to an office is vested in the Governor, with the advice and consent of the Senate, and the term of the incumbent expires during a recess of the Legislature, and the Governor appoints a successor to the office: *Held*, that there has been no *vacancy in office*, and that this appointment vested in the appointee a right to hold for his full term, subject only to be defeated by the non-concurrence of the Senate.

It would seem that the evident intent of the Constitution is to limit the Executive patronage. If the appointment by the Governor to such an office—the term of which expires during a recess—be an appointment to fill a *vacancy*, the practical effect is to increase the Executive patronage, giving the power of removal from such offices where the term expires during a recess of the Legislature, by failing to appoint during the session preceding.

In order to establish that such an appointment was only to *fill a vacancy*, it must be shown, first, that a vacancy existed; and, second, that no mode of filling it was provided.

The power of the Governor being exercised, he had no further control over the office until the appointee had been rejected by the Senate.

Where the term of an office is fixed by the Constitution, or the statute, the power of removal does not exist in the Executive.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

By the act of the third of May, 1852, the office of gauger of wines and liquors was created, and the term of office fixed at the period of two years, the office to be filled by the appointment of the Governor, by and with the advice of the Senate. From the agreed statement, it appears that on or about the twentieth day of May, 1852, William H. Hoburg was duly appointed, commissioned, and qualified, and was duly re-appointed at the expiration of the first term. On the twenty-fourth day of May, 1856, Mizner, the defendant was commissioned by the Governor, in the recess of the Legislature. The succeeding session of that body commenced on the first Monday of January and adjourned on the thirtieth of April, 1857. On the third day of April, 1857, the Governor appointed the relator, and his appointment was advised by a vote of sixteen out of thirty-three members elected to the Senate, the sixteen constituting a majority of the senators present. A judgment *pro forma* was given in the Court below for the relator, and the defendant appealed.

*Hoge & Wilson* for Appellant.

Upon the facts and the law, the judgment should have been for the defendant, and not the relator.

The appointment of Mizner was a legal, valid appointment, and being in full force and unexpired at the date of the appointment of the relator, there was no vacancy in the office, under the Constitution and laws, which the Governor was authorized

to fill; and, therefore, the appointment of the relator was absolutely void.

The appointment of the relator, not having been approved by the constitutional majority of the Senate, was invalid, and conferred no rights upon the relator.

The various sections of the Constitution in relation to the subject, have already received the authoritative exposition of this Court, in the cases of The People ex rel. Finley v. Jewett; The People v. Reed, and The People ex rel. Attorney-General v. Hill, and it is now settled law that the Governor of this State has no power of removal from office, when the duration of the term of such office is fixed by the Constitution, or the law creating the office.

The act of May 3, 1852, establishing the office in question, gives the appointment to the Governor, by and with the advice of the Senate, and limits the term of office to two years from the appointment.

The appointment of the defendant is in the usual form, is made upon the expiration of the term of the prior incumbent, and by the law of the office, must continue for the legal term of two years.

Upon what principle does the case fall without the decisions of the Supreme Court, cited above?

If the appointment had been given, by the law, exclusively to the Governor, there could be no question, in the present case, that that functionary had exhausted his whole power in the premises, and could not revoke his appointment.

How is the case changed, in consequence of the law requiring the co-operation of the Senate?

The law gives the power of appointment to two different, distinct bodies. Each exhausts its whole power when it performs its part in the transaction. The non-action of the one cannot enlarge or extend the power of the other. Either performing its part in the whole act is *functus officio,* and cannot resume its power.

Although we have found no case directly in point in the books, yet it is believed that the principles contended for may be deduced from the cases. And particularly from Marbury v. Madison, 1 Cranch; Justices of Jefferson County v. Clark, 1 Monroe, 82; Page v. Hardin, 8 B. Monroe, 648; Thomas v. Burrows et al., 23 Mississippi Reports, 550; and People v. Carrique, 2 Hill, 103 and 104.

*Gregory Yale and Frederick Billings* for Respondent.

The office of guager is one "created by law," and the Legislature has directed that the officer should be "appointed" by the Governor, by and with the advice and consent of the Senate.

The Legislature had the constitutional authority to create this

office, as a matter belonging to the regulation of the general police affairs of the State, and an undoubted authority to direct this mode of appointment. The only officer whose appointment is required by the Constitution to be made by the Governor, by and with the advice and consent of the Senate, is the Secretary of State.

The eighth section of article five, relating exclusively to the Executive Department, provides that "when any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election of the people."

There was no mode of filling a vacancy in this office provided for by the Constitution; the office is not created by it. There is no mode for filling a vacancy pointed out by the act of 1852; and this is the only act in which the office is named.

Was the office then vacant, when Mizner was appointed, in the sense used in this article, and by what cause was the vacancy produced?

The answer is, that Hoburg's term having expired by limitation, a vacancy was produced, which the Executive could fill by appointing Mizner, within the meaning of this section.

"Vacancy is a fact, the existence of which, like any other fact, is susceptible of being ascertained. Vacancy in an office can only be said to exist, when the office or place has no legal incumbent to discharge the duties of the office. * * The word 'vacancy' must be taken in the sense in which it was used by the framers of our Constitution, and cannot receive a definition from the Legislature, different from its known signification."

The same principles relating to appointments to fill vacancies, as here contended for, are firmly incorporated into our federal system—ours, in fact, being derived from that. The express provision of the Constitution of the United States, is: "The President shall have power to fill up all vacancies that may happen during the recess of the Senate, by granting commissions, which shall expire at the end of their next session." Art. II., § 2.

Nearly all the State Constitutions contain similar provisions. Mr. Justice Story, in his commentaries on the Constitution, referring to this section of article second, says: "That the appointments so made, by the very language of the Constitution, expire at the next session of the Senate; and commissions given by the President, have the same duration." Abridgment, § 805.

The whole question is involved in the inquiry already made and answered, as to the validity and duration of Mizner's appointment.

But the appellant's counsel have presented their case, upon the

assumption that Ryder's appointment is an attempt at the removal of Mizner, and that such an act was void under the seventh section of article eleven of the Constitution. That section provides, that "when the duration of an office is not provided for by this Constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment; nor shall the duration of any office, not fixed this Constitution, ever exceed four years." A settled exposition of this section has been given by this Court, within the comprehension of every one, in Jewett's case, and again in the police captain's case.

The relative and distinct authority between the Executive of the United States and the Senate, is stated by Story: "The President is to nominate, and thereby has the sole power to select for office; but his nomination cannot confer office, unless approved by a majority of the Senate. His responsibility and theirs is thus complete and distinct. He can never be compelled to yield to their appointment of a man unfit for office; and, on the other hand, they may withhold their advice and consent from any candidate who, in their judgment, does not possess due qualifications for office. Thus, no serious abuse of the power can take place without the co-operation of two co-ordinate branches of the government, acting in distinct spheres; and, if there should be any improper concession on either side, it is obvious that, from the structure and changes incident to each department, the evil cannot long endure, and will be remedied, as it should be, by the elective franchise. The consciousness of this check, will make the President more circumspect and deliberate in his nominations for his office. He will feel that, in case of a disagreement of opinion with the Senate, his principal vindication must depend upon the unexceptionable character of his nomination. And in case of a rejection, the most that could be said, is that he had not his first choice. He will still have a wide range of selection; and his responsibility to present another candidate, entirely qualified for the office, will be complete and unquestionable." § 790.

The question, then, had the Executive the authority to appoint Mizner? being answered in the affirmative, and the duration of that appointment being ascertained to be a constitutional term, ending on the thirtieth day of April, 1857, the conclusion is, that the new appointment of Ryder, and its confirmation by the Senate, confer upon him the office in question, for which he has judgment, and that the judgment should be affirmed by this Court.

BURNETT, J., after stating the facts in the case, delivered the opinion of the Court—TERRY, J., concurring.

The solution of the questions involved in this case must de-

pend upon the construction of the provisions of our Constitution in relation to appointments and removals from office, and the mode of filling vacancies in the same.

The only provision of the Constitution which seems to bear upon this case, is the eighth section of article fifth, "When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people.

Before this section can apply to this case, two things must be shown : First, that a vacancy existed.   Second, that no mode of filling it was provided.

It is insisted by the learned counsel for the defendant that no vacancy existed; that a *vacancy* can only occur *during the term*, and before its expiration, and that the appointment of the defendant was to fill the whole term.   The thirtieth section of the act concerning offices, Com. L., 244, contains a legislative definition of the term "*vacancy in office.*"   There are eight events mentioned, upon the happening of any one or more of which the office becomes vacant.   All the events mentioned must occur during the term; such as death, insanity, refusal or neglect to discharge the duties of the office, etc.   It is true this section does not contemplate a vacancy occasioned by the failure of the appointing power to act, but I think this legislative interpretation is not exclusive, and does not bind the Courts, and does not deprive the judiciary of the duty, and the right, to construe the word *vacancy*, as used in the Constitution.

In the case of The People v. Wells, 2 Cal. Rep., 204, vacancy is thus defined : " Vacancy in office can only be said to exist, when the office or place has no legal incumbent to discharge the duties of the office."   In the case of The People v. Mott, 3 Cal. Rep., 504, it appeared that the Legislature created the Tenth Judicial District, and adjourned without appointing a Judge, and the Governor, on the first of May, issued a commission to the respondent, Mott.   At the succeeding election, W. T. Barbour was elected to fill the remainder of the term.   The respondent claimed to have been appointed for the whole term, but this Court decided that the case came under the provisions of section eight, article five of the Constitution.   The appointment of the District Judge for the first term was required to be made by the "joint vote of the Legislature," and the appointment of respondent was only to fill the vacancy until the next election.

The next case decided by this Court, that has a material bearing upon the present case, is that of Dr. Joseph K. Reid.   The fifth section of the act of May 17, 1853, to establish an asylum for the insane, provides that " The Legislature shall elect, on joint-ballot, one resident-physician, who shall be superintendent

of the asylum; he shall hold his office for two years, and until his successor is appointed and qualified," etc.   The respondent, Dr. Reid, had been elected, and the Legislature, in 1856, adjourned without electing a successor, and Dr. Reid claimed the right to continue in the office until his successor was appointed, and qualified.   After the expiration of Dr. Reid's term, and during the recess of the Legislature, the Governor appointed a resident-physician, to fill the remainder of the term, under the provision of the twelfth section of the act, which provided that, " If any vacancy shall occur in the office of resident-physician, such vacancy shall be filled, for the unexpired term, by appointment of the Governor."   This Court held that a vacancy did exist, and that the appointee of the Governor was entitled to the office.

In the two cases of Mott and Reid, it was distinctly settled that a vacancy could occur in office, otherwise than by the happening of an event *after* the commencement, and before the termination, of the term.   In these cases the office had not been filled by a failure of the *appointing* power to act.   The vacancy did not arise from the happening of any event affecting the incumbent already in office, but was occasioned by the non-action of the appointing power.

But it will be perceived that the circumstances of those cases differ from the circumstances of this case.   In those cases the appointing power was solely vested in the Legislature, and that body was not in session, and could not then act.   Unless the Governor could fill the office by appointment, the office must have remained vacant, until the next meeting of the Legislature. If the Governor acted in reference to those offices, it was only by virtue of his power to fill *vacancies*, and not by virtue of his power to appoint for the *full term*.   Under the circumstances of those cases, the Governor, from necessity, must fill the offices by his sole appointment, or the end of the law, in creating those offices, be defeated for the time being.

The whole controversy, in this case, arises between the sole appointing power of the Governor, to fill *vacancies*, and his power to fill the *whole term*, with the advice of the Senate; and this is the first case, it is believed, where the question has fairly been presented to this Court.

The power of appointment to the office of guager is confided, by the act of the Legislature, to two separate and independent sources.   But, at the same time, the primary and most important part of the power resides in the Executive.   In making the appointment, his power is original and unlimited.   He can select any one, from all the qualified citizens of the State, while the power of the Senate is the right to advise, or refuse to advise, the appointment of the particular individual.

It would seem that the evident intent and whole spirit of the Constitution of the State was to limit the patronage of the Execu-

tive within very narrow bounds. This is seen from the fact that the only office created by the Constitution in which the Executive constitutes any part of the appointing power, is the office of Secretary of State. This is further shown by the provisions of the eighth section of article fifth, which limits the duration of an appointment of the Governor, in cases of vacancy, to the next election by the people, or the next session of the Legislature, except when a different rule is specially provided by statute. The power to fill vacancies had to be vested in some department of the government, and the Constitution was compelled to vest it in the Executive, because the only department that could be properly and efficiently charged with such a duty. But the Constitution carefully limited this power to fill vacancies for the time only, and when the appointing power for the whole time can act, the appointment of the Executive, for the time being, ceases. This was the basis and reason of the decision of this Court in the case of the People v. Fitch. The vacancy in the office of State Printer occurred during the session of the Legislature, and to fill the vacancy an appointment was made by the Governor, and an election also had by the Legislature. It was insisted that the right of the Executive to fill the vacancy was not confined to vacancies happening during the *recess* of the Legislature, because the eighth section of the fifth article is general, and not restrictive. No mode of filling vacancies had been pointed out in the act creating the office, or in any other act, when the vacancy occurred during the session. As, therefore, no mode of filling such a vacancy was provided by statute, and the language of the eighth section in terms, related to *all* vacancies not otherwise provided for, it was insisted that the vacancy in that case could be filled by Executive appointment, and if so filled, the appointment must continue, by the very terms of the section itself, to the end of the *next*, not the *then present* session of the Legislature. But this Court, going beyond the mere general words of the Constitution, and looking to its spirit and intent, decided, that when the appointing power was in existence, and did act in filling the vacancy, that the appointment was valid, and the Executive had no power to appoint, the office being elective by the Legislature. It has also been settled by repeated decisions of this Court, that when the duration of the term of an office is fixed by the Constitution or the statute, the power of removal does not exist in the Executive.

If, then, it be a correct conclusion, that the intention of the Constitution is to restrict, and not to extend, the sole power of the Executive in making appointments, how will this principle affect the present case? Conceding, for the sake of argument only, that the appointment of the relator was valid, how, then, would this principle be involved? A new term commenced on or about the twenty-fourth of May, 1856, in the

recess of the Legislature. No appointment had been made during the preceding session, as might have been legally done, and if the appointment of both the relator and the respondent be good, then the Governor has increased patronage, contrary to the intention of the Constitution, as we must construe it. If, then, we hold both these appointments valid, that of respondent to fill the first alleged vacancy, and that of the relator to fill the second, the *practical effect* is to give the Executive the power of removal in reference to those cases where the term of the office commences during the recess of the Legislature, and when the power of appointment is in the Governor and Senate. Such a rule once established might create a strong inducement for not making appointments at the session preceding the termination of the term.

It would, then, seem far more in accordance with the intention of the Constitution, and the former decisions of this Court, that the appointment of respondent should be referred to the power of the Governor to fill the whole term, with the advice of the Senate. The power of the Executive being once exercised, he had no further control over the office, until the appointee had been rejected by the Senate. The appointment vested the office in the respondent, Mizner, subject to be defeated by the non-concurrence of the Senate. Had his name been submitted to the Senate, and his appointment confirmed, the oath of office taken and the bond executed by him at the beginning, would have been good for the entire term. But when an appointment is made by the Executive to fill a vacancy for the time being, and the incumbent is afterwards appointed by the regular appointing power to fill the remainder of the term, then a new oath must be taken, and another official bond be executed. The United States *v.* Kirkpatrick, 9 Wheaton, 733.

It is, indeed, insisted, that the decision of the Supreme Court of the United States, in the case above-mentioned, sustains the position of the relator, and the case is referred to by his counsel with that view. The decision in that case would be in point for the relator, had the appointment of the respondent been made to fill a *vacancy*, but until that can be established, the case is not in point. The language of our Constitution, limiting the term of the appointment to fill a vacancy to the end of the next session of the Legislature, is almost exactly similar to that of the act of Congress in reference to an *original* appointment during the recess of the Senate. The act of Congress of the twenty-second of July, 1813, for the assessment and collection of direct taxes, and internal duties, provided, "That the collector, etc., shall be appointed for each of the said collection districts, etc., and if the appointment of the said collectors, or any of them, shall not be made during the present session, the President of the United States shall be, and is hereby, empowered to make such appoint-

Nieto v. Carpenter.

ment during the recess of the Senate, by granting commissions, *which shall expire at the end of their next session."* And the commission issued in that case was, by express terms, limited to continue to the " end of the next session of the Senate, and *no longer."* And the Court say, that " The two commissions are not only different in date, and given under different authorities and sureties, but they are of different natures. The first is limited in its duration to a specified period; the second is unlimited in duration, and during the pleasure of the President."

For the reasons given, we think the appointment of Mizner was for the whole term, and that there was no vacancy within the true intent and meaning of the Constitution, that could be filled by the appointment of the relator. The judgment of the Court below is, therefore, reversed, and the cause remanded, and the Court below will enter judgment for the respondent.

MURRAY, C. J.—I have not participated in the examination of this case, and, therefore, express no opinion on the subject.