THE PEOPLE, BY JO HAMILTON, ATTORNEY GENERAL, *ex rel.* JOHN H. BAIRD *v.* STEPHEN H. TILTON.

WHEN GOVERNOR MAY APPOINT TO AN OFFICE.—When there is a person in possession of an office who is expressly authorized by the statute or Constitution to discharge its duties temporarily, till the power upon whom the duty of election or appointment is devolved can regularly act, the Governor has no power to appoint, because no vacancy exists within the meaning of Article Five, section eight, of the Constitution.

WHEN GOVERNOR CAN FILL VACANCY IN OFFICE.—When the Act creating an office and fixing the duration of the term provides that the officer shall be elected by the Legislature, and hold his office until his successor is elected and qualified, the failure of the Legislature to elect at the expiration of the term does not create such a vacancy as the Governor is authorized to fill by appointment, but the incumbent holds until his successor is elected by the Legislature.

WHEN OFFICER MAY HOLD OVER.—When the term of an officer expires, and the law or the Constitution authorizes him to hold over until his successor is elected and qualified, the old incumbent is authorized to discharge the duties of the office until a qualified successor presents himself who has been elected by the body upon which the power of election is devolved; and the Governor has no power to appoint a successor.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Wilson & Crittenden, Hamilton & Gordon,* and *Jo Hamilton, Attorney General,* for Appellant.

The Act in relation to Harbor Commissioners provides that each Commissioner shall hold his office for the term of four years, and until his successor is elected, commissioned, qualified, etc. The case of the incumbent holding over after the expiration of his term by reason of a failure to elect his successor, is not provided for by the Act. There is no statutory provision expressly declaring that a failure to elect or appoint shall create a vacancy on the expiration of the term. But the effect of such a failure has been repeatedly decided, and it has uniformly been held that a vacancy was created by it. (*People* v. *Reid,* 6 Cal. 288; *People* v. *Baine,* 6 Cal.

509; *People* v. *Mizner*, 7 Cal. 519; *People* v. *Langdon*, 8 Cal. 1; *People* v. *Addison*, 10 Cal. 1; *People* v. *Stratton*, 28 Cal. 382; and *People* v. *Mott*, 3 Cal. 502.) These cases show that a provision authorizing the incumbent to hold the office until his successor is elected and qualified does not operate to extend the term, but makes the incumbent, after the expiration of the term, a mere *locum tenens*, subject to be displaced at any time by the election or appointment of a successor, either for a full term or to fill a vacancy.

*Patterson*, for Respondent.

The power conferred on the Governor by section fifteen of the Act to fill the vacancy "in the event of the death or resignation of either of the Commissioners," or in the event of absenting himself from the State, excludes, so far as the statute is concerned, the proposition that the Governor had power to appoint a successor to the *elected* of the Legislature, the latter having failed to elect. (Broom's Legal Maxims, 285; 25 Law Library, 187.)

By the Court, SAWYER, C. J.:

The Board of State Harbor Commissioners is composed of three members, one of whom is elected by the electors of the State, one "by the members of the Senate and Assembly in Joint Convention, on such a day and at such an hour as may be agreed to by both Houses," and one by the electors of San Francisco. (Stats. 1863, Sec. 1, p. 406; Stats. 1863–4, Sec. 1, p. 138.) "Each of said Commissioners shall hold his office for the term of four years, and *until his successor is elected*, commissioned, and qualified *as in this Act provided*, except the Commissioners first elected, who shall hold their offices as follows, viz: the first Commissioner elected by the Legislature in Joint Convention, shall be elected at the present session, and hold his office for one year from the date of the first meeting of the Board, as in this Act provided,

and until his successor is elected and qualified." Under this Act the defendent, Tilton, was elected as one of the first Commissioners, and as such, held till November 4th, 1864. On the 16th of January, 1864, he was elected by a Joint Convention of the Legislature, and in pursuance of such election, afterward duly commissioned by the Governor as Commissioner for the term of four years, commencing November 4th, 1864. On that day he duly qualified and entered upon the duties of the office, and he has ever since continued to discharge the duties of said office. The term of four years, for which he was thus elected, expired on the 3d of November, 1868. The Legislature met on the first Monday of December, 1867, and adjourned without day, on the 30th of March, 1868, without electing a successor to defendant, Tilton, for the term commencing November 4th, 1868. On the first day of December, 1868, and before another session of the Legislature, the Governor, assuming that there was a vacancy in said office, and that there was no other mode provided for filling it, appointed and commissioned the relator, Baird, as one of said Harbor Commissioners, who duly qualified and demanded of defendant the possession of the office, which demand was refused. This action is brought to try the right to the office, and the question is, whether, upon the facts stated, there was a vacancy in the office which the Governor was authorized to fill, within the meaning of Article Five, section eight, of the Constitution. The judgment of the District Court was for defendent.

We are referred to several cases by appellant's counsel, which are claimed by them to settle the question in their favor. The first and principal case relied on is *People* v. *Reid*, 6 Cal. 289. It arose under the Act to establish an Insane Asylum, which provides that "the Legislature shall elect, on joint ballot, one Resident Physician. * * * He shall hold his office for two years, and until his successor is appointed and qualified." (Stats. 1853, p. 204, Sec. 5.) Section twelve of the Act provides that "if any vacancy shall occur in the office of Resident or Assistant Physician, such

vacancy shall be filled for the unexpired term by appointment of the Governor." Reid was elected by the Legislature on the 24th and commissioned on the 27th of March, 1854. The Legislature adjourned on the 21st of April, 1856, without electing a successor, and on the twenty-ninth of the same month, more than two years after Reid had entered upon the duties, the Governor appointed Langdon. It was held that there was a vacancy in the office which the Governor was authorized to fill. This is certainly an adjudication that the failure to elect by the Legislature for the ensuing term created a vacancy in the office, notwithstanding the provision that the party elected should hold "until his successor is appointed and qualified." The Court do not discuss the question in this case, as to whether the appointment to fill the vacancy was made by the Governor by virtue of the authority given by section twelve of the Act before quoted, which provides that the vacancy "shall be filled for the unexpired term" by appointment of the Governor, or by virtue of the authority conferred by section eight, Article Five, of the Constitution, under which the commission would "expire at the end of the next session of the Legislature." But this latter question came up in relation to the same appointment in the subsequent case of *People* v. *Langdon*, 8 Cal. 1, where it was held that Langdon was appointed under the constitutional provision, and that his commission terminated with the next session of the Legislature. The two cases should be considered together, in order to ascertain what was determined. In the last case the Court seems to hold that the term "vacancy" does not mean the same thing when used in the Constitution as it does when used in a statute—that a vacancy, in the constitutional sense of the term, occurs when the electing or appointing power fails to act, or when the party elected or appointed fails to qualify; and a vacancy, in the statutory sense, is when the party enters upon the duties of the office, and afterward dies, resigns, or in any manner ceases to be an incumbent of the office before the expiration

of his term. But this distinction is not very clear, unless in cases where the term "vacancy," as used in the statute, appears to have some direct reference to a specific kind of vacancy defined by the statute. The Court having held in the first case that the failure to elect created a vacancy, which was properly filled by the appointment of Langdon, were driven into a long and unsatisfactory discussion when the second case appeared, in order to determine whether the appointment of Langdon was made by virtue of the power conferred by section eight, Article Five, of the Constitution, or of the power conferred by section twelve of the Act establishing the Insane Asylum, for the consequences, as to the time for which the appointee would hold, were different under the different provisions. Of course the question as to whether there was a vacancy at the time of the appointment of Langdon was *res adjudicata*, and therefore not open to further consideration, and it was necessary to dispose of the second case on that theory.

*People* v. *Baine*, 6 Cal. 509, differs from *People* v. *Reid*, in providing that the Trustees "shall go out of office at the expiration of one" and two years, without any provision that they should hold till their successors should be appointed and qualified. The Legislature having failed to elect successors, it was held that there were vacancies in the entire Board, which "the Governor of the State, by virtue of his general appointing power, corresponding to that of the Crown of Great Britain in such cases, had the power to fill." Where he got this "general appointing power" we are not informed. The case of *People* v. *Mizner*, 7 Cal. 519, does not touch the question, and is no authority on the point now involved. It is true, the Court stated what had been decided in *People* v. *Reid*, but it had no occasion upon the views taken to reinvestigate the question in the form presented in that case. Had it been otherwise, a different result might have been attained, as we shall see was subsequently attained by the same Justices in another case—*People* v. *Whitman*. In that case (*People* v. *Mizner*) the Governor, by and with

the advice of the Senate, was the party authorized to appoint the successor of Hoburg on the expiration of his term. (Stats. 1852, p. 131.) In pursuance of this authority, he did appoint Mizner, the term of his predecessor having expired during a recess of the Senate, and it was held that this was an appointment for the *term*, and *not to fill a vacancy;* and that the appointment, once made by the Governor, was valid till directly acted upon and rejected by the Senate. The case, however, is *against the appellant, rather than for him*, for it holds *that there was no vacancy*, within the constitutional sense of that term. The opinion of the Court concludes: "For the reasons given, we think the appointment of Mizner was for the whole term, *and that there was no vacancy, within the true intent and meaning of the Constitution, that could be filled by the appointment of the relator.*" (7 Cal. 527.) Why no vacancy, if *People* v. *Reid* adopts the correct theory? The Governor very well knew that Hoburg's term would not expire before the next meeting of the Legislature, and it was his duty to make the appointment ˙‥ anticipation of the expiration of the term before the adjournment, in order that the Senate might act upon it, and the office for the ensuing term be regularly filled. But the appointing power neglected its duty, so that when the term expired the whole appointing power was not in a condition to act. If this did not create a vacancy, within "the true intent and meaning of the Constitution," why should a similar neglect of duty by a different body create a vacancy in *Reid's Case?* In neither case was there a vacancy, within the specific statutory definition, and it must have been a vacancy within the meaning of the Constitution, or no vacancy at all recognized by law. Upon this point the two cases are certainly not consistent. *People* v. *Addison*, 10 Cal. 1, is but a repetition of *People* v. *Mizner*, so far as the question now involved is concerned.

The next case bearing upon the question is *People* v. *Whitman*, 10 Cal. 46. At the general election of 1855 Whitman was elected State Controller. He duly qualified and entered upon the duties of his office. At the State election in 1857,

Mandeville was elected as his successor, but having been appointed by the President of the United States to the office of United States Surveyor General of California, he accepted that office and declined to qualify for the office of Controller. Thereupon the Governor of California, assuming that there was a vacancy, appointed the relator, Malony, and the action was brought to determine the rights of the respective parties to the office. The Constitution then provided that the term of the office of Controller shall be the same as that of Governor; and with reference to Governor it provided that " the Governor shall be elected by the qualified electors at the time and places of voting for members of Assembly, and shall hold his office two years from the time of installation, and until his successor shall be qualified." (Const. Art. V, Sec. 2.) Under these provisions the Court, one Justice dissenting, held that Whitman held over, that there was no vacancy, and that the Governor had no power to appoint the relator. This decision is directly in conflict with that of *People* v. *Reid*, and, necessarily, overrules it, and it was so regarded by the dissenting Justice. (See conclusion of Mr. Justice FIELD's opinion in *People* v. *Whitman*, 10 Cal. 49.) *People* v. *Mott*, 3 Cal. 502, does not touch the question, for in that case the office had never been filled, and there was nobody entitled to discharge the duties of the office. There was clearly a vacancy in fact. There was an office which was entirely vacant, and for the time being there was no mode provided for filling it.

Thus it appears that there is a conflict in the decisions in this State upon the question as to whether a vacancy occurs by the failure to elect a successor to an officer, within the meaning of section eight, Article Five, of the Constitution, which the Governor is authorized to fill, the later cases being opposed to the earlier ones, or rather one, for the case of Reid is the only one where it was provided that the officer should hold till his successor should be appointed and qualified, in which the question is discussed, and the one upon which the appellant mainly relies. While all the cases which

have been brought to our notice, arising in other States, are opposed to the decision in *People* v. *Reid*, and in accord with *People* v. *Whitman*. They are (*Commonwealth* v. *Hanly*, 9 Pa. St. 513, and *State* v. *Lusk*, 18 Mo. 333,) referred to, and the point of the decision stated in the case of *People ex rel. Schoaff* v. *Parker*, decided at the present term, and also referred to in *People* v. *Reid*. The later authorities, and the weight of authority, appear to us to be against the appellant, and our predecessors have uniformly held that it was the manifest design of the Constitution to restrict the appointing power of the Governor to the narrowest limits. This principle has often been repeated. (*People* v. *Mizner*, 8 Cal. 524, 525; *People* v. *Langdon*, 8 Cal. 15; *People* v. *Whitman*, 10 Cal. 46.) If the point is doubtful, this recognized principle should turn the scale against the appointing power where there is a party authorized to perform the duties of the office till it can be filled by the regular appointing power.

It was manifestly the intent of the Constitution that the Governor should appoint only where there is no party authorized by law to discharge the duties of the office. The object was to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office. When there is a party expressly authorized by law to discharge those duties temporarily, till the power upon whom the duty of election, or appointment, is devolved can regularly act, there is no occasion for calling into exercise this extraordinary power vested in the Governor to make a merely *temporary* appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office when there is already a party expressly authorized by the Constitution, or laws to temporarily discharge those duties. The very reason upon which the power is vested in the Governor fails, and the case provided for has not arisen. And it can make no difference whether the language expressly authorizing a party to hold over and discharge the duties of an office temporarily till a successor duly elected and qualified appears, is found in the Constitu-

tion, or in the statute. The same construction should be given to the same language used in the same connection, in reference to a similar subject matter, when used in a statute, as when used in the Constitution.

In *People* v. *Whitman* the Court well say: "But the construction we have given the Constitution is not only supported by the language of the instrument, but by its general scope and spirit. The executive officers are elected by the people, and under an elective system it is more proper that these officers should hold over than that the duties should devolve upon those in whose selection the people have had no voice. It is only in cases where there is no incumbent of the particular office to hold over, that the system will allow the appointment of the Executive to fill the office. Our Constitution, whether wisely or unwisely, it is not our province to determine, has studiously restricted the patronage of the Governor. (*The People* v. *Mizner*, 7 Cal. 524.) In this case we have to decide between the choice of the people and the appointee of the Executive." The language of the Constitution then under consideration is, the Governor "shall hold his office two years from the time of his installation and until his successor shall be qualified." Suppose the people should fail to elect a Governor, or the one elected should neglect to qualify, or die before he could qualify, would it be pretended that a vacancy would arise within the meaning of the constitutional provision, which could be filled by an appointment by the existing Governor, either before the expiration of his term, or while he is holding till a successor could be appointed and qualified? In the present case the language of the Act is even more specific than that of the Constitution. It contains the language of the Constitution and more, by stating in express terms how the election is to be made. It is that the " Commissioner shall hold his office for the term of four years and until his successor is elected, commissioned, and qualified, *as in this Act provided*." How is he elected *as in this Act provided*? By the Legislature in Joint Convention, and not otherwise.

The first Legislature failed to elect, but the next one, which will be the first since the expiration of the term, may elect. In this case there has been no session of the Legislature since the expiration of Tilton's term. His term did not expire till more than seven months after the adjournment of the last session of the Legislature. It was evidently intended that the Commissioner elected should hold till another should be elected, notwithstanding one Legislature might fail to act. It is provided in the fifteenth section that when vacancies occur in certain modes, the Governor shall appoint to hold until it can be regularly filled in the appointed mode. But in all these cases there is no incumbent, *locum tenens*, or party in any way authorized to discharge the duties of the office. The fifteenth section enumerates the cases in which it was intended that the Governor should appoint, and it must be presumed that it enumerates all such cases. (*People* v. *Whitman*, 10 Cal. 45.) It seems manifestly the intention of the Legislature not to authorize the Governor to appoint in any case where there is a party authorized to discharge the duties of the office. Although the term has expired, and the old incumbent only holds over till his successor is duly elected and qualified; although he is not entitled to hold as the regular incumbent of the term, he is still a temporary incumbent, and authorized to discharge the duties of the position until a regular incumbent of the term, duly elected and qualified, presents himself. He is not merely acting *de facto*, but *de jure*—under the express authority of the law. (*Stratton* v. *Oulton*, 28 Cal. 44.) If the Governor should make an appointment, it would be only of the same temporary character. But if there is a vacancy, in any proper sense, after the expiration of the term, and before the election and qualification of a successor, the *statute itself fills the vacancy for the time being*, by providing that the old incumbent shall hold till a successor shall be elected and qualified. *This is as clearly a provision for the temporary vacancy as a direction that the Governor, or some other body, shall appoint for that time.* The provision is, not that the old incumbent

shall hold the office till the electing power has an oppor-
tunity of electing a successor, *but till " his successor is elected,
commissioned, and qualified, as in this Act provided"*—that is to
say, *is*, in fact, not *ought to be* elected, etc., whether that
event occurs at an earlier, or later, period. And the mode
provided by *this Act*, is, an election by a Joint Convention of
the Legislature, and not by appointment by the Governor.
If this is not a provision for filling the temporary vacancy, it
would be difficult for the Legislature to find language that
would express that intention. The law, therefore, provides
in express terms for filling the office by the old incumbent
from the date of the expiration of the term till a successor
is elected and qualified in the mode provided by law.
Another Legislature will meet and may fill the office, and
when it does, and the party elected qualifies, the defendant
will be required to vacate. But till a successor is elected,
*the office is temporarily filled by the party designated by the law*,
and there is no vacancy within the meaning of the Constitu-
tion, and no occasion for calling into exercise the extraor-
dinary power of the Governor, which was only given by the
Constitution in order that the public interest might not suffer
for want of a party authorized to discharge the duties per-
taining to a public office. If a vacancy occurs, then, by the
lapse of the term, the law provides how it shall be filled till
a successor is elected and qualified, and that is by the old
incumbent, and not by an appointment by the Governor.

We do not perceive that any considerable inconvenience is
likely to arise from the construction adopted, on the ground
that weak and incompetent men would often hold over, as
has been suggested. It is not to be presumed that the regu-
lar appointing power is more likely to elect incompetent men
for a full term, than that the Governor will appoint such
temporarily, and the experience acquired by the incumbent
for a term ought not to detract anything from his qualifica-
tions. On the contrary, he should be better qualified by his
experience. He has already become familiar with his duties,
while a temporary appointee of the Governor would scarcely

have time to acquire a knowledge of his duties before he would be required to surrender to a regularly elected successor. This alone is a sufficient justification of the policy of the law continuing the old incumbent for the temporary period. But a case like the present is likely to be of rare occurrence. Besides, this construction is by far the simplest, and had it been adopted in *People* v. *Reid,* the Court would have been saved the laborious, and not very satisfactory, discussion and the fine drawn distinctions to which it was driven in *People* v. *Mizner,* and *People* v. *Langdon,* in a not very successful effort to avoid inconsistency. Besides, it would have been in accordance with all the authorities at that time, so far as we are aware, and, as we think, would have been right upon principle, and our predecessors must have thought so in subsequent cases, which, in effect, overrule that case.

We do not perceive that the seventh section of Article Eleven of the Constitution, relied on by the Court in *People* v. *Reid,* as distinguishing the case from the cases to the contrary, cited from the other States, affords any solid ground from the construction there adopted. It is: "nor shall the duration of any office not fixed by the Constitution ever exceed four years." The framers of the Constitution certainly did not mean that the "*office,*" but rather the *term,* should not exceed four years. But this only applies to the term. It does not forbid the same man to hold for more than one term. The Legislature could certainly have re-elected the same incumbent for another term. So, admitting the appointing power to be in the Governor after the expiration of the term, he could undoubtedly have appointed the old incumbent. So the Legislature, as it created the office, was authorized to provide for filling it both for the term and for any temporary period after the expiration of the term, till another should be regularly appointed, whether that period be called a vacancy, or something else. And in this case it was provided that after the expiration of the

term fixed, the old incumbent should hold the office till his successor should be elected and qualified in the mode prescribed—"*as in this Act prescribed.*" If, therefore, as the Court say, after the expiration of the term, the incumbent " *did not* hold by the tenure of the approbation of the appointing power," he *does* hold by the express authority of the law, during the term which elapses between the expiration of the term and the regular election and qualification of his successor. The Legislature could, undoubtedly, authorize the Governor to designate the man who should temporarily hold the office in the contingency in question, and the Governor could, under such authority, designate the old incumbent, and if the Legislature can authorize the Governor to designate the man, we see no reason why it cannot itself designate the man by a law, passed in advance to meet the contingency when it should arise. There is no express limitation of the power of the Legislature to provide for filling temporary vacancies, and State Constitutions are not grants of power to the Legislature. Full power exists when there is no limitation. In this case the Legislature created the office and provided in its own way, both for electing the incumbent for the term, and for filling all temporary vacancies.

The argument, that the Legislature by refusing to elect might continue the old incumbent in office for twen y years, does not appear to afford any inference against the p wer to supply a temporary vacancy, in that mode as well as ` any other. It might with equal force be replied, that by ι sal to act the Legislature might confer power upon the Gov ɔr to fill the office for twenty years against the policy, boι ʾ the Constitution and the law itself requiring the Legisla to elect. The Legislature, or one branch of it, might ret to meet at all on similar partisan grounds, or to pass a, laws, or in any mode to take care of the interest of th people, but this affords no ground for an argument agains the power to do so. The fact that the Legislature may neglect or refuse to exercise any power, or discharge any duty, is no argument against the power. (*French* v. *Tesche-*

*maker*, 24 Cal. 545.) Besides, we are not permitted to indulge in presumptions, that a co-ordinate branch of the State Government will disregard its great constitutional duties, which its members have sworn to discharge, from unworthy, or other motives.

The only question, then, is whether we shall follow the case of *People* v. *Reid*, which was a manifest departure from the authorities then existing, or the later cases in our own Court substantially overruling it—the latter being supported, so far as we are advised, by the unbroken authorities from other States, and, as we think, also, by sound reason. Of course, we cannot hesitate.

Judgment affirmed.

CROCKETT, J., dissenting:

In the case of *People ex rel. Schoaff* v. *Parker*, decided at the present term, I have discussed the general propositions which, in my opinion, are decisive of this action. But it is claimed on behalf of the respondent, that the Act providing for the appointment of Harbor Commissioners contains a provision which distinguishes this case from those that have preceded it, and establishes that, by the very terms of the Act, the respondent is entitled to hold the office until his successor is elected, commissioned, and qualified in the manner therein designated; that is to say, by the Legislature in Joint Convention assembled. The argument is, that inasmuch as the office of Harbor Commissioner is a mere creature of the statute, the Legislature had the power to declare what should be deemed a vacancy, and how and when it should be filled; that it has expressly reserved to itself the power of appointment in respect to the office in contest, and having duly appointed the respondent, who was therefore rightfully in office, he will continue rightfully in office until the Legislature shall elect his successor. In other words, that the office is not vacant, notwithstanding the term for

which the respondent was appointed has expired, and the Legislature has failed to elect his successor. The provision relied on in support of this proposition is as follows: "Each of said Commissioners shall hold his office for the term of four years, and until his successor is elected, commissioned, and qualified, *as in this Act provided.*" The Act provides for the election of three Commissioners—one by the Legislature in Joint Convention; one by the qualified electors of the State at a general election, and one by the qualified electors of the City and County of San Francisco at a municipal election. The respondent was elected by the Legislature, for the term of four years, commencing November 4th, 1864. His term, therefore, expired November 4th, 1868, and the Legislature having failed to elect his successor, the office became *vacant,* unless the provision above quoted has the effect to continue him in office, not merely as a *locum tenens,* but as a rightful incumbent, *de jure,* of the office, until the Legislature shall see fit to elect his successor. If the argument in behalf of the respondent be sound, it follows as a logical result that if each successive Legislature for the next twenty years should fail to elect his successor, the respondent, during all that period, would be the rightful incumbent, *de jure;* holding the office not as a *locum tenens,* but by force of the statute, and that no vacancy had occurred which could be filled by an appointment by the Governor. In this method, by simply failing or refusing to elect a successor, the same person, without any new appointment, might be continued in the same office indefinitely, notwithstanding the Constitution, in Article Eleven, section seven, provides that the duration of any office not fixed by the Constitution shall never exceed four years. In this method, the Legislature might accomplish by indirection what it had no power to do directly. The same result might be accomplished by the factious opposition of a bare majority of either branch of the Legislature, in refusing to go into Joint Convention for the purpose of electing a successor to the incumbent. We may suppose a case, in which a large majority of the Legis-

lature would desire to elect a successor to an obnoxious incumbent of an important office, whose term had expired, or was about to expire, and yet a bare majority of either House might, on this theory, continue the incumbent in office indefinitely, against the wishes of a majority of the Legislature, and in palpable evasion of the constitutional provision limiting the term of office to four years. It is no answer to this proposition to say that the Legislature has the power to re-elect the incumbent to the same office as often as his term expires, and may thus keep him in office as long as it sees fit. The latter, I concede, is a legitimate exercise of power under the Constitution. But in electing an officer, his fitness and qualifications for it come under discussion, and his election is the result of the final action of a deliberative body, whose duty it is to examine and pass upon his fitness for the place. There is an opportunity for discussion and the introduction of evidence in respect to the propriety of the appointment.

The Constitution, therefore, for good reasons, has not prohibited to the Legislature the power to reappoint the same person to the office on the expiration of his term. But a reappointment by a majority of the Legislature in Joint Convention, after an opportunity is afforded for discussion and inquiry, is quite a different affair from continuing the incumbent in office by a mere refusal or failure to act, when there is no opportunity for either discussion or inquiry, and particularly if the legislative will is thwarted and its failure to act is produced by a refusal of a bare majority of either House to go into Joint Convention; which refusal may be solely for the purpose of continuing the incumbent in office. In this method, so long as a bare majority of either House saw fit to do it, it might retain in the office an obnoxious incumbent, in flagrant disregard of the wishes of a majority of the Legislature, and in plain violation of the spirit if not the letter of the Constitution. If the Act for the appointment of Harbor Commissioners can be so construed as to

authorize this result, it is to that extent in violation of that clause of the Constitution to which I have referred.

The term of the office was four years, and under the Constitution it was limited to that duration. The Legislature had the power to re-elect the respondent on the expiration of his term; but it had no authority, under the Constitution, to continue him in office beyond the four years without a re-election, except as a mere *locum tenens*, to avoid an interregnum in the office. In the absence of any provision to that effect in the statute, he might have discharged the duties of the office, as *locum tenens*, until his successor was appointed. This right he would have had at common law, without the aid of the statute. But the *office* would be vacant, nevertheless, and subject to be filled by the appointment of the Governor, if there was no other method designated by law. This branch of the subject I have discussed fully in *People ex rel. Schoaff* v. *Parker*, and it is unnecessary to repeat the argument here. In my opinion the judgment ought to be reversed

SPRAGUE, J., dissenting:

This case is not distinguished on any essential particular from the case of *The People ex rel. Schoaff* v. *Parker*, just decided. I adhere to my opinion, as expressed in that case, and am of opinion that the judgment in the present case should be reversed.