Williams, J.
The facts, as far as they are important in the consideration of the questions made in the case, are, in substance, that at the regular municipal election held in the spring of 1895, the defendant was duly elected to the office of mayor of the city of Greenville, for the full and lawful term ensuing; and was the incumbent of the office, *550 ' serving on his term, when the general municipal election was held in April, 1897, at which he was a candidate for re-election. He was declared by the proper authorities to have been re-elected to the office, and has continued to hold the same. At that election the relator was also a candidate for the office, and the only competitor of the defendant therefor; and being dissatisfied with the declared result, he instituted a proceeding to contest the election, which resulted in "a finding*, by the tribunal trying the contest, that the defendant “did not receive a majority of all the legal votes east at said election, held April 5, 1897,” and for that reason he “was not elected to the office.” Thereupon, the council of the city, upon receiving a copy of the decision, concluded there was a vacancy in the office of mayor, and appointed the relator to fill it, who, accordingly, took the oath of office, executed an official bond, and demanded possession of the office, which the defendant refused to surrender.
The case turns upon the legal effect of the proceeding to contest; the relator claiming that it resulted in producing a vacancy in the office which the council was authorized to fill by appointment, and consequently he is entitled to the office; while the claim, of the defendant is that no such vacancy occurred.
The constitution enjoins upon the general assembly the duty of providing by law, “before what authority, and in what manner, the trial of contested elections shall be conducted;” and by section 1731 of the Revised Statutes, the election of mayor, except in the cities of the first grade of the first class, “may be contested in the manner provided for contesting the election of justices of the peace.” The election of any person declared *551 elected to the office of justice of the peace, maybe contested by any candidate, or elector of the township in which the election was held, by making application for that purpose to the probate judge of the county, within ten days after the election, stating the points on which the contestor relies. A time is then fixed by the judge for the hearing, notice given the person whose election is contested to appear, and the judge selects three respectable freeholders of the county to try the contest. Revised Statutes, sections 572, 573. Section 575, provides: “The jury of freeholders shall be sworn, to try Such contest agreeable to evidence, and no evidence shall be admitted but such as relates to the points stated in the notice; and when the trial is closed, the freeholders shall sign their decision, which shall be attested by the probate judge; and if, by such decision, there is a vacancy in the office of the justice of the peace, the judge shall, within three days thereafter, transmit a copy of such decision to the trustees of the township, or the clerk thereof, if there be no trustees, who shall forthwith give notice to the electors to fill such vacancy as in other cases; and if, by the decision, the election remains good, he shall transmit the same to the clerk of the court of common pleas, who shall immediately proceed as if no contest had taken place.” Section 576, contains the provision, that the election shall not be set aside because illegal votes were cast, “if it appear that the person whose election is contested, has the greatest number of legal votes given at such election after deducting all illegal votes given, when there is no evidence for whom such illegal votes were given, as well as all illegal votes which are shown to have been given for the person whose *552 election is contested.” And, it is provided by-section 578, that: “If the contestor fail in setting-aside the election, he shall pay the costs, and the judge or justice, as the case may be, shall render judgment, from which there shall be no appeal, and issue execution for the same to the sheriff, or any constable of the county; but if the election is set aside, the township in which said election was held shall pay the costs.”
The foregoing are all the statutory provisions affecting the manner of the contest and the proceedings subsequent to the decision, which it is important to notice and it is claimed from them, by counsel for the plaintiff in error, that the jury selected to try the contest is limited in its powers, to the decision of the question whether the contestee was elected, or not. In support of this position, a decision by the district court of Hamilton county, in the case of State v. Simpson, reported in 5 W. L. B., 422, is cited, where that construction appears to have been placed on the statutes; though, in that case, the only question involved, was whether a decision that the contes tee was not elected, was in legal effect a decision that the contestor was elected. The latter claimed title to the office solely on that ground, and not as an appointee to a supposed vacancy resulting from the decision of the contest.
While we think it is clear the position taken by the relator in that case was not tenable, and the ease was properly decided against him, we entertain a somewhat different view of the statute from that there expressed. Assuming, however, that as counsel contend, the effect of the decision of the contest in this case is, that at the April election of 1897, there was a failure to elect a sueces *553 sor of the defendant to the office of mayor, the question is presented whether a vacancy of the office was thereby occasioned which the council •was authorized to fill by appointment. It is not doubted that a vacancy occurs where, in a contest of the election of a justice of the peace, it is determined that there has been no valid election of a successor to a justice whose term then expired; because, by the constitution, the term of office of justices of the peace is limited to three years, and they are without authority to hold beyond the expiration of their term. Hence, provision is made by section 575, for filing such vacancy by special election. The constitution, however, prescribes no limit to the terms of municipal officers, but has' invested the legislature with full discretionary power over the subject. That body has enacted: “That unless otherwise provided, all municipal officers shall serve until their successors are qualified. Revised Statutes, section 1713, (91 O. L., 172.)” It is not otherwise provided with respect to the office of mayor, so that, his lawful term, expressly fixed by statute, is not only for two years^ but also until his successor shall be qualified. His right to serve after the expiration of the designated period, until the qualification of his successor, being conferred by statute at the time of his election, is no less a part of his statutory term of office, than is the fixed period itself; and while he is so serving, there can be no vacancy in the office; in any proper sense of the term, for there is an actual incumbent of the office legally entitled to hold the same. As was said by McIlvain, J., in State v. Howe 25 Ohio St., 588, 596, “the incumbent continues in office, not as a mere de facto officer or locum tenens, but as its rightful possessor *554 until such successor” is duly chosen and qualified. And by a successor, is not meant a mere temporary appointee, but one regularly chosen in succession to the office, to take the place of the predecessor on account of the cessation of his right of occupancy. Among other cases which support this view are, State v. Bryson, 44 Ohio St., 458, 465; State v. McCracken, 51 Ohio St., 124, 129; People v. Tilton, 37 Cal., 614. The-rule applicable to cases like the one before us is, therefore, that where an officer elected by the people is authorized to hold the office for a fixed period and until his successor is qualified, a failure to elect a successor does not create a vacancy to be filled by appointment under a general authority to fill vacancies. If the council had made no appointment, the right of the defendant to continue in the occupancy of the office until a successor should be elected and qualified, would be indisputable; it could not plausibly be claimed that a vacancy existed; and if not, it must follow that none was produced by the expiration of the designated term, or the failure to elect .a successor. And it is not apparent how any action of the council in making an appointment to the office, can operate to create a vacancy to be so filled, where none otherwise existed, unless that power be expressly conferred by statute. The appointive power exercised by the council in this case, is sought to be maintained under section 1754, of the Revised Statutes, which provides that: “In case of the déath, resignation, disability or other vacation of his office, the council may * * * appoint some suitable person, within the corporation to act as mayor and discharge the duties of the office until the vacancy is filled or the disability removed.” In the case *555 of the death, resignation, or disability of the officer, the office is left without an occupant, there is an actual vacancy in the office; and under familiar rules of construction, it may well be' claimed that the phrase “other vacation of his office, “refers to other cases of actual vacation, similar in character to those previously mentioned, such as leave the office without an incumbent. Nothing is found in this section of the statute which empowers the council to declare a vacancy where none exists; and, as has already been observed, no vacancy existed in the office of mayor, actual or legal, when the relator was appointed.
It is argued that by force of the provisions of section 575, a vacancy resulted from the decision of the election contest; and, that section having special application to such cases, they are governed by it rather than by general provisions of the statutes. If this were so, then, according to such special provision, the vacancy must be filled by special election. There is no authority given to fill it by appointment. But, the statute makes applicable to contests of elections of municipal officers, the provisions of the statute governing the contests of elections of justice of the peace, only in so far as they relate to the manner of conducting the contest. The proceedings . subsequent to the decision of the contest, are no part of the manner of the contest, and consequently have no application to contested municipal elections. Hence, no provision is made for certifying the result of the contest to the council, or clerk of a corporation; and the absence of such provision, clearly shows that it was not within the legislative purpose that there should be any action by the council, or other municipal officers, founded upon *556 the decision of the contest, either in the way of making appointments to the office, or otherwise, except as authority may have been conferred by other statutory provisions. Upon the theory of the cases as argued for the relator with regard to the effect of the decision of the contest, his petition shows no right to the relief he seeks.
We are also of opinion that the powers and duties of the jury selected'to try the contest are ■ not so limited as has been suggested. Ordinarily, the trial and decision of a contested election case between two persons who were rival candidates for the same office, involves the hearing and determination of all questions, within the specified points of contest whien affect the rights of the respective parties to the office in controversy, and necessarily a determination of those rights. It may be, in certain cases, that for lack of compliance with the law, no valid election has been held; or, that when the election has been purged of frauds and mistakes neither party has received the votes necessary to his election; and in either ease, the contest ends in simply setting aside the election. But where one or the other of the candidates has been legally elected to the office, the decision should so declare, and put an end to the controversy; and the power to do so, is included in the power to try and decide the contest, unless it is excluded by, or is inconsistent with some express provision of the statute. The clauses of the statute which are supposed to place the limitation contended for on the powers of the tribunal trying the contest, are those which provide that, “if by the decision there is a vacancy in the office of the justice of the peace;” and, “if by the decision, the election remains good;” and the fur *557 ther provisions that the election shall not “be set aside on account of illegal votes,” etc., and if the contes tor fail “in setting aside the election, he shall pay the costs;” but “if the election is set aside, the township shall pay the costs. ” From these provisions it is argued, that the only deci- - sion contemplated, is one setting aside the election, or one sustaining the title of the contestee. It is evident the statute does contemplate and authorize either of those decisions, as the facts proven may warrant. But it contemplates something more. If the decision be that the contestor was elected, the-election is not set aside, but remains good as well as if the decision be in favor of the contestee. Neither of the statutory provisions referred to, while applicable to the cases mentioned, nor any other that has come under our notice, prescribes any limitations on the power to try and decide the contest; which power is conferred in general terms, broad enough to authorize and require a complete determination of every 'question involved in it. This being so, the contest between the relator and defendant has not been decided. The decision that the defendant was not elected, is not a decision that the relator was: nor, is it a decision that no valid election was held. And the contest proceeding remaining'incomplete, the title of the defendant to the office is unaffected thereby. There is now no way to remedy the omission. The freeholders selected to try the contest having signed their report and been discharged, cannot be re-assembled for further action; and the time for instituting another contest is past. Again, the report of the freeholders as set out in the petition, can scarcely be regarded as a decision that the defendant was not elected to the office *558 from which it is sought to oust him. They simply find, “the defendant did not receive a majority of all the legal votes cast at said election in said city, held April 5, 1897,” and, “therefore” decide that he was not elected. It was not essential to the defendant’s election that he should have re-, ceived a majority of all the legal votes east at that „ election; it was sufficient if he received a greater number of legal votes than was cast for any other candidate for the office; and there is no finding-or decision, directly, or by fair implication, that he received a less number of legal votes. The decision that he was not elected, is a conclusion founded on a statement of facts not sufficient to warrant or sustain it; and being- expressly placed on that state of facts, excludes any inference that it may have been based on other facts not found. In order to deprive a person of an office to which he has been declared elected by the duly constituted election officers having that authority, and to which he. bears the customary evidence of his title, the decision of a contest instituted against him should^ show on its face, with reasonable certainty, that he was not elected. We do not say it is required that the grounds of the decision be stated; but when they are given, and the decision is expressly placed upon those stated, it will not be presumed there were others not stated, on which it might have been placed; and where, in such case, the facts on which the decision rests are insufficient to warrant it, the decision cannot be sustained.

Judgment affirmed.